[*General Term, January*, 1873.]

THE SECOND NATIONAL BANK OF CINCINNATI *v.* R. C. M.
LOVELL ET AL.

If persons procure a special act of incorporation from the legislature of
another state, and organize under such act, with no actual intent to
evade or defraud the laws of Ohio, but for the purpose of holding prop-
erty and doing business chiefly in Ohio, and keep an office and hold
their annual meetings in the state creating such corporation, and all
their business meetings, for convenience, in this state, the courts of
this state will not treat such corporation as a mere copartnership, or
joint stock company, or association of individuals, but recognize its
acts and obligations as corporate.

If one of the *officers* of such body loan money to it upon a promissory
note purporting to be made by it, by its president, he will be estopped
from denying its corporate existence, and can not recover upon the
same against the stockholders personally.

And if, to obtain a loan of money, he pledges such note as collateral se-
curity, his lender knowing that the organization claims to be a cor-
poration, and the individual stockholders were ignorant of such trans-
actions, such last lender, or pledgee, stands in the shoes of his borrower,
and can not recover against the stockholders personally, because his
borrower could not. Such paper is not the commercial paper of indi-
viduals taken in the usual course of business, without notice of the
rights of the stockholders against personal liability upon the same.

*Pugh, Throop,* and *Hoadly & Johnson,* for plaintiff.

*Lincoln, Smith & Stevens,* for defendant.

YAPLE, J. This is a proceeding in error, to reverse a
judgment, rendered in Special Term, against the plaintiff,
and in favor of the defendants—Joseph L. Hall, Miles
Greenwood, and J. H. French. The bank brought an
action against Lovell, J. H. French, Joseph L. Hall, Miles
Greenwood, B. Homans, Jr., J. Smith Homans, Jr., Francis
Howland, and Nathan T. Johnson, as copartners, but three
of whom were ever served with process, to wit, the three
in whose favor judgment was rendered. The action was

brought upon a promissory note, of which, with the indorsements, the following is a copy:

"$7,500.                              CINCINNATI, *June* 10, 1869.

"Ninety days after date, we promise to pay to the order of R. C. M. Lovell seven thousand five hundred dollars, payable at the office of Homans & Co.   Value received.

[$3.75 stamp.]        "SOUTHERN OHIO COHL CO.,
                         *"By R. C. M. Lovell, Pres't."*

Indorsed, "R. C. M. Lovell."

[5 cent stamp, canceled September 11, 1869.]

"Demand, notice, and protest waived.

                              "R. C. M. LOVELL."

In June, 1869, B. Homans, Jr., the owner of the bank called "Homans & Co.," the holder of the note, deposited it, with other paper, amounting in all to over $32,000, with the plaintiff, as collateral security for a loan it then made him, upon the faith thereof, of $20,000.

B. Homans, Jr., became insolvent on August 26, 1869, before the maturity of this note, and was afterward declared a bankrupt.

The defendants served with process denied by answer, among other things, that they executed the note, or that the defendants named in the petition were copartners, or personally liable on the note.

On February 26, 1868, the Southern Ohio Coal Company was incorporated by the legislature of the State of Kentucky, *by special act,* naming R. M. C. Lovell, J. H. French, and B. Homans, Jr., and constituting them, their associates, successors, and assigns, a body politic and corporate, with power to contract, etc., in all places; the principal office was to be kept in Covington, Kentucky, and power, so far as Kentucky could authorize it, was expressly granted to purchase, lease, hold and use, and mine real property in or out of the state, not exceeding ten thousand acres; also, the right to hold and use personal property, merchandise, etc. The capital stock was fixed at $300,000, to be divided into

shares of $100 each, to be subscribed and paid for in such manner as the by-laws might prescribe.

On the next day, February 29, 1868, an organization was effected under this charter at Covington, the directors being Lovell, French, Johnson, and Homans; Lovell was elected president, and B. Homans, Jr., secretary and treasurer of the corporation. It was in evidence upon the trial that it was intended, *bona fide*, to keep the office of the company in Covington; that an office was always there, and that the annual meetings were held there. It appears, however, that most, if not all the subsequent business meetings of the directors were held in Cincinnati, Ohio, at Homans' bank, he residing in Covington, and carrying on his bank in Cincinnati. At the time of procuring the act of incorporation, Lovell, French, and B. Homans, Jr., resided in Kentucky; J. Smith Homans, Jr., Francis Howland, and Nathan T. Johnson, in New Jersey; and Greenwood and Hall, in Cincinnati, Ohio; but the two latter had nothing to do with the enterprise until after the charter was obtained, after which they subscribed $5,000 stock each, being assured it was a Kentucky corporation. It seems, also, that French did not become a stockholder in fact till after the charter was procured, when he subscribed and paid $5,000. The enterprise was set on foot and organized by the other parties and French, the New Jersey parties having coal lands in Athens county, Ohio, which they put in as stock at a valuation of over $80,000.

They first designed to organize as a corporation under the laws of Ohio, and had articles duly prepared for that purpose, when they ascertained that none of them could be directors, as they did not reside in the state. Some of them lived in Kentucky, and all could become directors in that state. They were also informed that there would be no individual liability under the laws of that state, whereas they would be personally liable in double the amount of their stock in Ohio; but, if they could have been qualified to act as directors in Ohio, it appears that they would have been organized under the Ohio law. They took the course

they did upon the advice of counsel, and with no actual intent to perpetrate a fraud upon the laws of this state. It appears, also, that they did keep an office in Covington, Kentucky, and it does not appear that they did *not* intend to do *any* business in that state, though, doubtless, the great preponderance of the company's interest was expected to lie in Ohio. Indeed, furnishing coal to the factories of Newport and Covington, Kentucky, would seem to be an almost necessary consequence of the prosecution of a successful business by this corporation. It was not successful. It had difficulty with the railroad company with which it contracted to bring its coal to Cincinnati; and Homans' failure seems to have virtually destroyed it.

The plaintiff contends that these defendants are *personally* liable on the note sued upon, because, in Ohio, the Southern Ohio Coal Company was never a corporation, as the parties getting it up did so to become an Ohio corporation in fact, but nominally a foreign corporation, with intent to defraud the constitution and laws of Ohio; and that, while we are precluded from holding that they perpetrated a fraud upon the State of Kentucky in procuring the special act of incorporation, we are authorized to find that they were personally guilty of a fraud upon the State of Ohio in accepting and organizing under that charter after it was passed, and in assuming to act under it in Ohio.

If the facts made out such a case, I have no doubt of the correctness of the legal position assumed by the plaintiff, though one of my brethren has. I do not think that individuals, by any mere fraudulent device, can come into the State of Ohio and control its constitution and laws for their own gain, by disregarding them, made, as they were, for the protection of its citizens, even if the legislature has not forbidden them to do so by statute. *Hill* v. *Beach*, 1 Beas. N. J. Ch. 31; *Land Grant R. Co.* v. *Comm'rs Coffey County*, 6 Kansas, 245. *Newburg Petroleum Co.* v. *Weare*, District Court, Washington County, Ohio, by Brinkerhoff, C. J.: " *Held*, that an incorporated company, under the laws of

another state, for the *exclusive* purpose of transacting business *in this state*, can not, as such incorporated company, bring suit in our courts."

But, if such incorporated company keeps an office in the state creating it, and *may* do business there, though very little as compared with the business expected to be done in Ohio, and none of its organizers were qualified, by the laws of this state, to conduct it, and for that reason it became incorporated in another state, such body, we think, should be recognized in Ohio as a corporation of the state creating it. *Messick* v. *Van Santvoord*, 34 N. Y. 208. The note, sued on, purports to have been made by the corporation and not by the members thereof. · The latter, therefore, are not personally liable upon it, for the reason that it is the note of a corporation.

But, grant that this is no corporation, are these defendants, Greenwood, Hall, and French, personally liable upon this note to this bank ? If they are, it is because the note is their contract, express or implied. The note itself, and all the facts connected with the transaction, make it clear that they did not expressly contract as individuals.

Is it their implied contract ? If so, it is because the consideration is money had and received for their joint individual use, which, in equity and good conscience, they ought to pay.

Lovell, without their knowledge or express consent, borrowed money from Homans & Co.—Benj. Homans, Jr., the treasurer and secretary of the coal company—for which he gave this note. Homans must be held to have known all the facts in relation to the nature and powers of the company, and he, clearly, could not maintain a personal action thereon against these parties. He would have been estopped to deny the existence of the Kentucky corporation. Now, for a loan to himself, he deposited this note with the bank as collateral security, of which these defendants had no knowledge. It does not purport to be their individual negotiable note, but the note of a corporation.. It surely was not their commercial paper. The bank, at

farthest, only took it for what it might be in law. If in law—apart from the law governing commercial paper negotiated before due—these defendants would have been liable to Homans for money had and received, the bank merely acquired that right. They would not have been liable to Homans; and the bank acquired no better right than Homans'. See *Porter* v. *Dunlap*, 17 Ohio St. 595, 596; *Devoss* v. *Gray*, 22 Ohio St. 159.

In this case, too, it is proved that the bank knew this coal company claimed to be a corporation, so it did not take this note in the usual course of business as the joint note of these defendants, individually; and this, if there could be any doubt otherwise, places it in the shoes of Homans, who admittedly could hold none of these defendants personally. Neither Lovell nor Homans was ever the authorized agent of these defendants to bind them personally by contract.

The judgment is affirmed.