HENRY E. CLEATON, Appellant, v. JOHN S. EMERY
*et al.*, Respondents.

Kansas City Court of Appeals, April 25, 1892.

1. **Corporations:** CHARTERED IN ONE STATE TO DO BUSINESS IN
ANOTHER: COMITY.    A charter to conduct an exposition at St. Joseph,
Missouri, was obtained from the state of Colorado, with a capital of
$1,000,000, when in fact there was only $43,000 stock subscribed. The
laws of Missouri require that before such charter shall issue all the
stock shall be *bona fide* subscribed, and one-half thereof fully paid up.
The whole business of said corporation was to be conducted at St.
Joseph, Missouri, where its principal office was, though there was pro-
vision for the establishment of branch offices at Denver, Colorado, and
other places.   *Held*, the rule of comity does not protect such corpora-
tion which was a fraud upon the laws of both states, and only color-
able and absolutely void, and the incorporators were partners, and
liable as such for the debts of the alleged corporation.

2. **Estoppel:** VALIDITY OF CORPORATION: CREDITORS.   While one hav-
ing secured some  advantage from an alleged corporation cannot, on
an attempt to enforce payment, deny the existence of the corporation,
yet the corporate creditor seeking to enforce payment of his debt may
ignore the existence of the corporation and proceed against the sup-
posed stockholders as partners, by proving that the prescribed method
of becoming incorporated was not complied with.

*Appeal from the Buchanan Circuit Court.*—HON. HENRY
M. RAMEY, Judge.

REVERSED AND REMANDED.

*Johnson & Wilson*, for appellant.

(1)   The attempt to incorporate in Colorado was
a fraud on the laws of the state of Missouri and on the
laws of the state of Colorado.   *Hill v. Beach*, 12 N. J.
Eq. 31; *Land Grant Co. v. Coffey Co.*, 6 Kan. 245;
*Stout v. Zulick*, 7 Atl. Rep. (N. J.) 362; *Bank v. Earle*,
13 Pet. 520; *Mills v. Grocery Co.*, 15 S. W. Rep. (Tex.)

Cleaton v. Emery.

505; 2 Morawetz on Private Corporations [2 Ed.] 924; Beach on Private Corporations, 296, 297; 2 Morawetz on Private Corporations [2 Ed.] 917. (2) Defendants having contracted the debt sued on, while assuming to act as the directors and agents of a corporation which had no legal existence as a corporation, are liable to plaintiff as partners. *Hill v. Beach*, 12 N. J. Eq. 31; *Land Grant Co. v. Coffey Co.*, 6 Kan. 245; *Empire Mills v. Grocery Co.*, 15 S. W. Rep. 505; *Richardson v. Pitts*, 71 Mo. 129; *Hurt v. Salisbury*, 55 Mo. 310; *Glenn v. Bergman*, 20 Mo. App. 343; *Martin v. Fewell*, 79 Mo. 401; *Mining Co. v. Richards*, 95 Mo. 106. (3) No rule of comity will allow one state to charter corporations to operate in another state. To hold that a state must recognize as legal a corporation thus spawned upon it is to say that the right of one state, aided by comity, is superior to the sovereign will of the other. When it is shown that the character of such a corporation is opposed to the settled legislative policy of the state wherein it is sought to be domiciled, it will not be held legal by reason of a rule of comity, and it is not necessary that a state should by express enactment exclude foreign corporations in order to indicate that they shall not be allowed to act within its jurisdiction. *Bank v. Earle*, 13 Pet. 592; *Empire Mills v. Grocery Co.*, 15 S. W. Rep. 506; *Christian Union v. Yount*, 101 U. S. 356; 2 Morawetz on Private Corporations [2 Ed.] ch. 13, pars. 959, 960, 965, 965a, pp. 917, 918, 919, 923, 924; 1 Beach on Private Corporations, ch. 9, par. 164, p. 297.

*M. A. Reed* and *Stephen S. Brown*, for respondents.

(1) Under the laws of Colorado, non-residents are permitted to incorporate. Doing what the laws of Colorado authorize cannot, therefore, be in law a fraud upon the laws of Colorado. *Humphrey v. Mooney*, 5

Col. 282; 1 Morawetz on Corporations, sec. 35; *Railroad v. Railroad*, 31 N. J. Eq. 475. (2) The right of a corporation to do a thing outside of the state granting the charter depends upon the law of country. That all of its business was to be done by the very terms of its charter, outside of the charter state, is no defiance to contracts thus made, nor is the corporation a nullity in consequence thereof. *Merrick v. Van Santvoord*, 34 N. Y. 208; 10 Amer. Corp. Cases, 437–438; *Saltmarsh v. Spaulding*, 17 N. E. Rep. 317; *Food Co. v. Baumback*, 32 Fed. Rep. 208; *Land Co. v. Lilton*, 19 Fed. Rep. 73; *Calwell v. Springs Co.*, 100 U. S. 55; *Christian Union v. Yount*, 101 U. S. 356; *Stevens v. Pratt*, 101 Ill. 224; *Bank v. Lovell*, 2 Cin. 405; *Petroleum Co. v. Weare*, 27 Ohio St. 352; *Hanna v. International, etc., Co.*, 23 Ohio St. 622; 2 Morawetz on Corporations, secs. 991, 965*a*. The view sustained by the above cases "is now established by the great weight of authority." Cook on Stock & Stockholders, sec. 239.

*Kelley & Kelley*, also for respondents.

(1) It is said that a corporation must dwell in the place of its creation, that it must live and have its legal being under the law in that state, yet it does not follow that its existence there will not be recognized in other places. It may exercise the powers with which it is endowed by its charter in another state, when not prohibited from doing so by the laws of such other state. *Bank v. Earle*, 13 Pet. (U. S.) 519–597; 10 Myer's Federal Decisions, book C. 8, secs. 1077, 1123. The law does not require the incorporators to be citizens of the state in which the corporation is created. The legal corporate entity is in contemplation of law located and has its situs in the state creating it, but the promoters. or stockholders—members of the corporation—may live

in any or all states of the Union, and no one of them need live in the state granting the charter or certificate of incorporation, unless the statute requires it. *Humphreys v. Mooney*, 5 Col. 282; *McGinty v. Reservoir Co.*, 29 N. E. Rep. (Mass.) 510; *Maine v. Baumbach*, 32 Fed. Rep. 205. The corporators need not be subscribers to the capital stock or have any interest in the company. *Oil Co. v. Densmore*, 64 Pa. St. 43. This then was a corporation *de jure*. (2) If a corporate association has actually been formed in violation of law, it is not to be treated as no corporation at all, but rather as a corporation *de facto*, until its existence be terminated by the courts in a direct proceeding for that purpose. 2 Morawetz on Corporations, secs. 745, 746; *Gent v. Ins. Co.*, 107 Ill. 652; 6 Am. & Eng. Corp. Cases, 588; 4 American & English Encyclopedia of Law, p. 197, sub. 8, n. In such cases its members are liable to creditors to the amount of their stock, the same as if the corporation was legally created (2 Morawetz, sec. 755); but not as partners. Sec. 748; Cook on Stock & Stockholders, sec. 239. Although the organization be obtained by fraud, or for an unauthorized purpose, it is a *de facto* corporation at least, and the state only can interfere. 2 Morawetz, sec. 769; *Kayser v. Bremen*, 16 Mo. 90; *Macon Co. v. Shores*, 97 U. S. 227; *Atherton v. Sugar Creek*, 67 Ind. 334. The question of the existence of a corporation can only be raised by the state, in *quo warranto* or the like. It cannot be raised collaterally, and when a defective organization appears it will be sustained as a corporation *de facto*. *Ass'n v. Ins. Co.*, 3 Am. & Eng. Corp. Cases, 78, 90, n; *Eaton v. Walker*, 27 Am. & Eng. Corp. Cases, 310, n; *Bank v. Stearns*, 15 Wend. 314; *Church v. Pickett*, 19 N. Y. 487; *Heaston v. Railroad*, 16 Ind. 275; *Swartout v. Railroad*, 24 Mich. 393; *Bank v. Stone*, 38 Mich. 779; *Douglas Co. v. Bolles*, 94 U. S. 104; *Thompson v. Candor*, 60 Ill.

247; *Barrett v. Mead*, 10 Allen (Mass.) 337; *St. Louis v. Shields*, 62 Mo. 247; *Freeland v. Ins. Co.*, 94 Pa. St. 504. (3) When a corporation is actually in existence, its proper organization will be presumed, and persons dealing with it cannot dispute the corporate existence, on the ground of informality in its creation. *Chub v. Upton*, 95 U. S. 666; 3 Am. & Eng. Corp. Cases, 90, n; 4 Am. & Eng. Corp. Cases, 175; 2 Morawetz, secs. 750–1; *Imboden v. Etowah*, 70 Ga. 86. And the corporation is estopped to set up irregularities in its own organization, when it has undertaken to act in its corporate capacity. *Whitney v. Wyman*, 101 U. S. 392; 3 Am. & Eng. Corp. Cases, 90.

GILL, J.—In the year 1889, the defendants, who compose some of the principal business men of St. Joseph, Missouri, conceived the idea of holding at said city a mammoth fair and exposition. To this end books were opened, but they were only able to secure subscriptions to the enterprise aggregating $43,000. In order, doubtless, to impress the country with the magnitude of the proposed undertaking, it was determined to organize a corporation with a stated capital of $1,000,000. But under the corporation laws of Missouri this could not be done with such a meager subscription of only $43,000, since by the provisions of our laws for the incorporation of such business enterprises, the whole of the stock must have been in good faith subscribed, and fifty per cent. thereof paid up before such million-dollar corporation could be organized. R. S. 1889, sec. 2768. To avoid this obstacle, and evade the restrictions of the laws of their own state, the defendants (all citizens of St. Joseph, Missouri) then sought to organize as a corporation under the laws of the state of Colorado, where it seems the capital stock may be named at any sum, however large,

and the incorporators will be held to no individual liability beyond the amount by them subscribed.   Carrying out this plan, these gentlemen entered into articles of association at St. Joseph, pretending the organization of "The National Railway, Electric & Industrial Exposition Association," with a stated capital of $1,000,000, whereas there was, in fact, at no time a subscription of stock exceeding the $43,000.   These articles were, May, 1889, filed with the secretary of the state of Colorado, and a certificate of incorporation procured.   By said articles of incorporation, the object stated was to hold said exposition at St. Joseph, Missouri, and the term of existence of the association limited to one year.

The enterprise proved a serious disaster, at least, financially; the assets of the pretended corporation proved inadequate for the payment of its debts, and this is an action by one of its creditors, whereby it is sought to hold the defendant incorporators liable as partners.   The good faith of the corporation is attacked, on the ground that this organizing under the laws of Colorado was a legal fraud on the laws of that state as well as of Missouri; that there was then no incorporation, but that these defendants should be held liable as partners for its unpaid debts.   No question is made as to the correctness of plaintiff's account; the only matter in dispute is whether or not the defendants are individually liable therefor.

The cause was tried by the court below without the aid of a jury; a finding and judgment was had in favor of defendants, and plaintiff has appealed.

I.   It is of course well understood that the incorporating in one nation or state, either by special act or general law, has no extra-territorial force.   In other words, the statute laws of one state have no force or effect as such in other states.   Such recognition as is given corporate entities in states other than the parent

state, or home, of the corporation comes alone from that international courtesy or law of comity always existing by common consent between different countries. It is then only by virtue of this inter-state "common law of comity" that the existence of this exposition corporation created in Colorado can be at all recognized in this state. It is not meant by this law of comity that because a certain corporation may have been, in form, created in one state it shall necessarily be permitted recognition in another state. "This law of comity was not established for the purpose of giving any state an unlimited power to dispose of the franchise of acting in a corporate capacity in other states. To obtain a charter for the purpose of evading the laws of a foreign state, under cover of the rule of comity, would be a fraud upon the state granting the charter; and to attempt to act under such charter in the foreign state would be a fraud upon the latter." This statement of the law is quoted from 2 Morawetz on Private Corporations, section 965a, and we regard it as a succinct and pointed recognition of the true rule; and under it we must hold the incorporation here in question only colorable and absolutely void. The procuring of the incorporation of this St. Joseph Fair Association was a fraud on the state of Colorado, as by its statutes it never was meant to incorporate a concern whose entire business was to be conducted in a foreign jurisdiction, not even providing for the location of its general or principal office within the limits of said state. Section 2, chapter 19, General Statutes, Colorado (1883), which must give life to this corporation (if it has any vitality), admits the right to incorporate for the purpose of conducting a business, a portion of which shall be within and a portion without the state, but impliedly rejects the creation of corporations whose principal office and whose entire business shall be maintained and operated in other states. It is

there named as a requisite in the certificate of incorporation, that "it shall state the name of the town or place and the county in which the principal office of the company shall be kept" (where the entire business is to be transacted in that state); and, when any company shall be created under the laws of this state for the purpose of carrying on *part* of its business beyond the limits thereof, such certificate shall state that fact, and shall state the name of the town and county in *this state* in which the principal office of said company shall be kept."

Clearly then the statutes of Colorado meant to provide for the creation of such corporations, a *part*, at least, of whose business was to be transacted in that state, and manifestly, too, it was the intention that the principal office of the corporation should be kept in the state of Colorado; yet we have here in the articles of association signed by these defendants a provision that the principal office of the corporation shall be at St. Joseph, Missouri. It is true that the articles formerly stipulated for the establishment of branch offices at various cities throughout the country, and among them at Denver, Colorado. Still this does not cover up nor conceal the sole design of the incorporation which was the conduct of a fair and exposition at St. Joseph, and nowhere else. It is disclosed, too, that no branch offices were indeed ever established, unless it was from the appointment of an agent, so called, at Denver during the last days of the exposition at St. Joseph, and when the enterprise was already a pronounced failure.

We have here then the state of Colorado granting a corporate franchise to our own citizens to do business alone in this state. Not only that, but the sole purpose was to avoid the restrictions so wisely engrafted onto our corporation laws. To hedge about and protect its

people from false appearances and merely advertised capital that has no real existence, our legislature has provided against the creation of those corporations of abundant pretenses, and no capital. Hence, it was not in the power of these defendants to incorporate, under the laws of Missouri, with a pretended capital of $1,000,000, while there was in fact less than $50,000 stock subscribed. And will it be permitted them to go to another state and do indirectly what they cannot do here directly? The state of Colorado attempted here by this incorporation to create and send out to another state this organized entity, not to do business within its own realm, but to carry on such business altogether in another state, The well-considered decision of *Land Grant Co. v. Commissioners of Coffey, Co.* (6 Kan. 245) is here applicable. There the corporation was created in Pennsylvania with authority to transact its business in any other state except Pennsylvania. The supreme court of Kansas denied such a corporation any recognition, using the following language: "No rule of comity will allow one state to spawn corporations and send them forth into other states to be nurtured and do business there, when said first-mentioned state will not allow them to do business within its own boundaries." * * * "A corporation, in order to have any legal existence, must have a home, a domicile, a principal place of business within the boundaries of the state which creates it."

So, in the state of Texas, where corporations for mercantile purposes were not permitted, but a firm at Dallas, in that state, secured incorporation in Iowa, the courts of Texas declined to recognize the concern as a corporation, and held the pretended incorporators as partners. *Empire Mills. v. Grocery Co.*, 15 S. W. Rep. 505.

And in the state of New Jersey certain persons, with the design of operating a quarry in that state, went to New York, and became incorporated with a view of limiting their liability. The New Jersey courts refused to recognize such pretended incorporation, declaring that "it was perfectly manifest, upon the face of such proceedings, that the attempted organization under the general laws of New York respecting corporations was a fraud upon the law of that state," and the defendants were held "as partners trading under the name they have assumed." *Hill v. Beach*, 12 N. J. Ch. Rep. 31. Without occupying further space we refer to the text-books and cases cited by plaintiff's counsel.

We have carefully read and considered the cases relied upon by defendants; and, while some have gone far in the direction of admitting the validity of foreign corporations, regardless of where the business thereof shall be prosecuted, we have yet to find a decision that goes to the extent we are asked to go in the case at bar. In all of these we find some semblance, at least, of business done or performed in the home state of the corporation, such as the yearly elections of directors and officers at the office of the company, kept in the legal domicile of the corporation, as were the cases of *Merrick v. Van Santvoord*, 34 N. Y. 208, and *Hanna v. Company*, 23 Ohio St. 622. Or cases where the corporation was organized in one state and extended its operations into other states, as in *Atchison, T. & S. F. Ry. Co. v. Fletcher*, 35 Kan. 236. Or, as in the case of *Moxie Nerve Food Co. v. Baumbach*, 32 Fed. Rep. 205, where, though the main business of the corporation was transacted in jurisdictions other than the parent state, and the incorporators lived in such other states, yet its general office was maintained, and the

corporate elections carried on at such home office in the parent state.

So, too, the case cited in the text-books and in defendant's brief, decided by the superior court of Cincinnati, entitled *Second Nat. Bank v. Lovell*, 2 Cin. Rep. 397, has gone almost to the verge of absurdity in sustaining the charters of foreign corporations. But there the incorporation was saved, because the articles of association provided a home office at Covington, Kentucky, and under its charter the corporation was entitled to do business in Kentucky, the parent state, and it did keep its principal office there, where, too, its elections were held.

We conclude, then, this to be an effort to have the state of Colorado create a Missouri corporation. To concede its validity and recognize its existence, is to admit authority in another state to direct the granting of such franchises in the borders of this commonwealth; in short to yield to Colorado the partial exercise of our state's sovereignty. If this is to be allowed, then any business house at St. Joseph, Kansas City, or elsewhere in this state, desiring to incorporate and thereby limit the liability of the owners and promoters, may get up their articles of association and may choose to go to Denver and secure incorporation, rather than to Jefferson City, even though the entire business of the proposed corporation (including the maintenance of its principal office, the election of directors, etc.) shall be done at St. Joseph or Kansas City; and this is to be permitted because, forsooth, the laws of Colorado are more *"liberal"* than those of Missouri. Such an evasion of our laws by our own people, it seems, can receive no countenance from the courts, even under the laws of comity.

II. It is however claimed that plaintiff cannot in this collateral action question the legality of the

corporate existence with which he nominally dealt; that plaintiff contracted with this assumed corporation as such, and that now he will not be permitted to deny its legal existence. If said corporation was now seeking to enforce some obligation made to it by the plaintiff, then the contention would be of some avail. It would be said to him that having secured some advantage, having acquired money or property from the alleged corporation, he could not, on an attempt to enforce payment on his promise to pay therefor, deny the existence of the corporation. There would be, in such case, good grounds of estoppel. "But this rule, in this state at least, has been confined to cases where the corporation, or those claiming under the corporation, assert some rights under the contract. * * * But the propriety of applying the rule to a case where a party makes a contract with a body, believing it to be a corporation, when in fact such body is no corporation, thereby leaving him remediless to enforce his contract against anyone, has been expressly denied." *Glenn v. Bergman*, 22 Mo. App. 346; *Martin v. Fewell*, 79 Mo. 401; *Hurt v. Salisbury*, 55 Mo. 310; *Granby Mining Co. v. Richards*, 95 Mo. 110.

The books quite uniformly agree, that "a corporate creditor seeking to enforce the payment of his debt may ignore the existence of the corporation, and may proceed against the supposed stockholders as partners by proving that the prescribed method of becoming incorporated was not complied with by the company in question. He is not estopped from so doing, since he is not repudiating a contract, but is enforcing it. The fact that he contracted with them under a corporate name is immaterial, since at common law parties may carry on business under any name they choose." Cook on Stock & Stockholders, 233, and cases cited. Applying these rules to the case

at bar, these defendants were assuming to prosecute a business under the name of a corporation, but said incorporation, as already said, was procured by a legal fraud, and had no rightful or real existence; and hence, under all the authorities, the defendants are liable as partners. Beach on Corporations, sec. 162, and authorities *supra*.

The judgment of the circuit court will, therefore, be reversed and the cause remanded to be proceeded with in accordance with the principles here announced. All concur.