CASE 100—Two SEPARATE ACTIONS BROUGHT BY THE LOUISVILLE HOME
TELEPHONE COMPANY AGAINST THE CUMBERLAND TELEPHONE AND
TELEGRAPH COMPANY FOR INJUNCTION AND OTHER RELIEF.—
FEB. 18.

## Cumberland Telegraph & Telephone Co. v. Louisville Home Telephone Co. (Two cases.)

APPEAL FROM JEFFERSON CIRCUIT COURT, CHANCERY DIVISION.

JUDGMENT FOR PLAINTIFF AND DEFENDANT APPEALS. AFFIRMED.

FOREIGN CORPORATIONS—RIGHT TO SUE—TELEPHONE POLES—INTERFERENCE WITH ERECTION—INJUNCTION.

Held: 1. Where a foreign corporation had spent nearly $500,000 in the construction of a telephone system in a city in the State under a franchise granted by the city, it had a right to sue in the courts of the State to protect its rights; and the fact that all of its incorporators but one were residents of the State,

and that the evident object of forming the corporation else-
where was to obtain the benefit of less rigorous laws, could
not defeat that right; it appearing that the State was not com-
plaining.

2. Where a telephone company had been granted a permit to erect
its poles on the same side of a street with the poles of another
company, having a prior, but not exclusive, franchise, and the
old company, whenever the new one started to put in poles of a
certain height, immediately changed its own poles, and made
them of such a height as to prevent the new company from pro-
ceeding, an injunction was issuable.

FAIRLEIGH, STRAUS & EAGLES, AND HUMPHREY, BURNETT
& HUMPHREY, FOR APPELLANT.

HELM, BRUCE & HELM, FOR APPELLEE.

(No briefs in the record.)

OPINION OF THE COURT BY JUDGE HOBSON—AFFIRMING.

On August 17, 1886, by an ordinance of the city of Louis-
ville, pursuant to an act of the Legislature approved April
3, 1886, the Ohio Valley Telephone Company was authorized
to construct, operate, and maintain a telephone system on
the streets of the city; but the ordinance contained this
provision: "Nothing in this ordinance shall be so construed
as to give the said telephone company, its successor or as-
signs, any exclusive right to erect poles or to lay under-
ground conduits, pipes, cables, conductors or wires in the
streets, avenues, alleys or sidewalks of the city of Louis-
ville." The company accepted the provisions of the ordi-
nance, and constructed its telephone system, which it main-
tained until the year 1900, when it was consolidated with
the appellant, the Cumberland Telephone & Telegraph Com-
pany, and since that time the consolidated company has
continued to maintain and operate this telephone system.
On November 5, 1900, the general council of the city of
Louisville passed an ordinance providing for the sale at
public auction of the franchise or privilege to construct,

maintain, and operate a telephone system in the city; the purchaser to have the right to transfer or assign the franchise, provided the transfer was not made to any competing telephone system. It was also provided in the ordinance that the telephone system should be constructed in the public ways of the city, under the supervision of the board of public works, and that the franchise should not be construed as being in any way exclusive, or as preventing the council from providing for the sale of similar franchises to other persons. E. M. Coleman purchased the franchise, when sold at public auction under the ordinance, for the sum of $10,000, and assigned his purchase to appellee, the Louisville Home Telephone Company—a corporation formed on March 20, 1901, under the laws of Delaware. It thereupon complied with the terms of the ordinance, by the execution of bonds to the city as required thereby, and began operations for the construction of its telephone system under permits from the board of public works. One of its lines, through the eastern part of the city, ran along Frankfort avenue; and, as the Cumberland Telephone & Telegraph Company had also a line along Frankfort avenue, notice was given it of the application, and a time fixed when both companies could be heard. They were heard by the board, and the board then, in person, visited the grounds, and, after looking over the actual situation, granted the permit as asked for by the appellee, which allowed it to erect its line on the same side of the street as the line of appellant, but on higher poles, and up above it. Appellee thereupon commenced building its line, and distributed its poles along the street for a considerable distance. These poles were 50 feet long. It set the poles for several squares, and was going on smoothly until one morning, when the workmen returned, they found that, since the last evening,

appellant had set just in front of them, along the street where appellee's poles were lying on the ground, waiting to be erected, its poles, forty-five feet long. As a 5-foot space was not sufficient for the operation of a telephone system, appellee hauled away its 50-foot poles, and set in place of them poles 55 feet high, so that it would have 10 feet of space above the top of appellant's 45-foot poles, and so continued to construct its line. After this, appellant took down its 45-foot poles, and substituted for them 50-foot poles, thus leaving appellee, as before, only 5 feet of space. At another point on the line, where appellant was maintaining 35-foot poles, appellee erected 50-foot poles, so as to leave 15 feet of space above them. After it had done this, appellant erected in the same line poles 50 feet long, notched exactly the same way as appellant's, so as to render it impossible for appellee to operate its line, as two telephone systems can not be operated on the same horizontal plane. At another point along the avenue appellant's poles were set out along the roadway; the street at this point not having been improved, or sidewalks constructed. Appellee set its poles, 50 feet long, on the line of the sidewalk. Appellant then set new poles, 55 feet long, in the same line. Appellee thereupon instituted these two actions to restrain appellant from interfering with it, and to require it to cut off its poles, or make its line in the plane 10 feet below it. The chancellor adjudged the relief sought, and the defendant appeals.

It is shown in the record that appellee, the Louisville Home Telephone Company, was formed in Delaware by incorporators, one of whom lived in Ohio, and the others in Kentucky. The articles of incorporation do not conform to the Kentucky laws, and it is urged that the incorporators evaded the laws of Kentucky to get privileges not granted

here, and to avoid burdens placed by our law, and that, having gone to Delaware for this purpose, the corporation formed by them, should not on principles of comity be recognized by the courts of Kentucky, or allowed to sue here. The corporation may do business in Delaware or in any other State, and, while its incorporators seem to have contemplated that their main business would be done in Louisville, they are not by their articles confined to this State; and in fact they contemplated doing business in other States, as shown by the evidence. The purpose they had in going to Delaware to get their articles of incorporation does not clearly appear, except as it may be inferred from the fact that the laws of Delaware are not so rigorous as the laws of Kentucky. It is conceded that a foreign corporation is recognized in other States only as a matter of comity, but, owing to the intimate association of the people of the several States, corporations formed in one State have been universally recognized in other States, except in cases clearly forbidden by the policy of those States. Thus it has been held that a corporation formed in one State, which is not allowed to do business there, by the terms of its articles of incorporation, will not be recognized elsewhere. Land Grant Railway v. Board of Commissioners, 6 Kan., 245. And where the statutes of a State did not allow a corporation to carry on a mercantile business, citizens of that State, who had themselves incorporated in another State, and then did business as a corporation in the State of their domicile, were held liable as partners. Empire Mills v. Alston Grocery Company (Tex. App.), 15 S. W., 505, 12 L. R. A., 366. So where the charter of incorporation was not valid in the State in which it was made. Montgomery v. Forbes, 148 Mass., 249, 19 N. E., 342. Other cases may be found in which, what are denominated "tramp corpora-

Cumberland Tel. & Tel. Co. v. Louisville Home Tel. Co. (2 Cases.)

tions" having become insolvent, their stockholders have been held liable in the State of their domicile as partners.   6 Thompson on Corporations, sec. 7895, 7896, and cases cited; Cleaton v. Emery, 49 Mo. App., 345; Hill v. Beach, 12 N. J. Eq., 31. On the other hand, the court of appeals of New York refused to follow this rule in a case where citizens of New York had obtained a West Virginia charter of incorporation, which contained no privileges not granted by the laws of New York.   Demarest v. Flack, 28 N. E., 645, 13 L. R. A., 854. But no question of this sort arises here.  This is not an application by the State, questioning appellee's power to act as a corporation.  The objection is made by appellant when sued by appellee for an invasion of its rights.  Appellee has not only been incorporated in the State of Delaware, but it has been recognized by the authorities of the city of Louisville as a corporation, and has been granted by it an important and valuable franchise.  It is at least a *de facto* corporation, and the rule seems to be that, when an association of persons is exercising corporate franchises under color of legal organization, the existence of the corporation can not be inquired into collaterally, but only in a direct proceeding by the government.  The reason of the rule is that it would produce endless confusion, and destroy the corporation, if the legality of its existence could be drawn in question in every suit to which it was a party, for then no judgment could be rendered which would finally settle the question.  Where property has been granted to such a corporation and it brings a suit to recover its property, the defendant can not be allowed to inquire into the regularity of the organization in that suit, upon the broad principle of common justice and public policy.  Agricultural Association v. Insurance Company, 70 Ala., 130; East Norway Church v. Froislie, 37 Minn., 477, 35 N. W.

260; First Baptist Church v. Branham, 90 Cal., 22, 27 Pac., 60; Eaton v. Aspinwall, 19 N. Y., 119; Buffalo, etc., Railroad Co. v. Cary, 26 N. Y., 75; Exporting Co. v. Locke, 50 Ala., 332; Gill's Adm'x v. Mining Co., 7 Bush, 639. The stock of corporations is now sold every day in the market, and may in a short time entirely change hands, so that none of the original incorporators have any longer an interest in the corporation; and to allow a trespasser who had destroyed its property to defeat an action against him by the corporation on the ground that it was not originally properly incorporated, when the State has not complained, and the municipality has recognized and contracted with the corporation, would be a perversion of justice. It appears from the record that appellee has spent something like a half million of dollars in the construction of its telephone system under the grant referred to. It has been the policy of the State to invite foreign capital here, to aid us in the development of the resources of the State. This corporation has come here under that policy, and, in the absence of some express legislation, we are not at liberty to shut the doors of the court against it when suing for the protection of valuable rights granted to it by the municipality pursuant to the laws of the State. We rest our judgment here, and intimate no opinion on any other question discussed on the argument.

On the merits of the case we have little difficulty. Appellant's franchise was not exclusive. Its prior occupation of a particular space entitled it to the continued enjoyment of that space without substantial impairment by appellee; but this enjoyment is subject to such incidents as result from the exercise of the rights of appellee under its franchise, for it is necessarily implied in the grant to appellee that it is subject to such limitations as will enable

another to enjoy a like franchise.  Otherwise the right of the first company obtaining a grant would amount to a monopoly.  This was not intended.  The grant to appellant is like other privileges in the public ways.  It must be exercised in such a way as not unduly to interfere with the rights of others.  The substance of its rights can not be appropriated by another, but there is no reason why two telephone companies can not operate on the same side of the street; and, from the proof in this case, it is not only common, but much better than to have them on different sides, when there are electric light lines on the street, or other wires carrying heavy currents of electricity.  The city authorities may rightfully determine in what manner the streets may be used, and to what extent, and when, structures may be erected in them; and, within reasonable limits, to fix the space to be occupied by rival telephone lines.  Of course, there must be no substantial impairment of appellant's property rights, but mere inconvenience must be endured by it, just as by all others, in the enjoyment of the public utilities of the city.  After a careful reading of the record, we are unable to see that any substantial injustice was done appellant by the chancellor's judgment.  On the contrary, it seems to us to have been in accord with the real equity of the case.

Judgment affirmed.

Whole court sitting.