[S. F. No. 11344.    In Bank.—November 6, 1925.]

POSTAL TELEGRAPH–CABLE COMPANY, Petitioner, v. RAILROAD COMMISSION OF THE STATE OF CALIFORNIA, Respondent.

[1] RAILROAD COMMISSION—PETITION FOR REHEARING—GROUNDS—CERTIORARI.—In view of the provisions of sections 66 and 67 of the Public Utilities Act, where the applicant for a rehearing of an order of the Railroad Commission requiring a telegraph company to relocate its lines at a distance from the lines of a power com-

pany, and for the division of the costs equally between the two
companies, does not specifically set forth in its petition the con-
stitutional objections that such order violates the provisions of the
state and federal constitutions relating to the taking or damaging
of property without just compensation and the due process and
equal protection clauses of the federal constitution, those objec-
tions are not reviewable on certiorari.

[2] ID.—RELOCATION OF PARALLEL LINES—DIVISION OF COSTS—JURIS-
DICTION.—The jurisdiction or power of the Railroad Commission to
make an order requiring a telegraph company to relocate its lines
at a distance from the lines of a power company, so as to prevent
induction interference, and for the division of the costs between
the two companies, does not depend upon whether the commission
acted wisely or unwisely in the determination of the issue involved;
and failure of the Commission to make an equitable apportionment
of the costs constitutes nothing more than error of judgment.

[3] ID.—DIVISION OF COSTS—DEPARTURE FROM PRECEDENT—ABSENCE OF
IRREGULARITY.—On a proceeding before the Railroad Commission
to obtain an order for the relocation of the lines of a telegraph
company and a power company, so as to prevent induction inter-
ference, and for the assessment or apportionment of the costs, the
departure of the Commission from its own precedent in such mat-
ters, or its failure to observe a rule ordinarily respected by it, is
not a matter under the control of the supreme court on *certiorari;*
and such a matter does not tend to show that the Commission did
not regularly pursue its authority or that said departure violates
any right of the petitioner guaranteed by the state or federal
constitution, as circumstances peculiar to the given situation may
justify such departure.

[4] ID.—DAMAGES FOR NEGLIGENCE—CONTINUANCE OF EXISTING CONDI-
TIONS—JURISDICTION OF COMMISSION.—The Railroad Commission
has no jurisdiction to adjudicate the amount of damage which
may have accrued to a telegraph company against a power com-
pany because of the negligent or improper construction or main-
tenance of the parallel circuit system of the power company—the
question germane to the Commission's duty being whether the two
companies can exist in their existing location and perform public
services under grant of the laws of the state with due regard to
public efficiency and the safety of person and property.

[5] ID.—COMPARATIVE COSTS—CONSIDERATION BY COMMISSION.—On a
proceeding before the Railroad Commission to obtain an order for
the relocation of the lines of the telegraph company and a power
company, so as to prevent induction interference, the fact that
the estimated cost of relocating the lines of the telegraph company

is comparatively small, as compared with the estimated cost of relocating the lines of the power company, is a legitimate matter for the consideration of the Commission in determining which lines should be relocated.

[6] ID.—RELOCATION OF PARALLEL LINES—PUBLIC INTEREST AND SAFETY —POLICE POWERS—JURISDICTION OF COMMISSION.—The Railroad Commission is not created merely to act as an arbiter of disputes between private electric companies, but to promote the public interest and safety generally; and in making its order requiring a telegraph company to relocate its lines at a distance from the lines of a power company, so as to prevent induction interference, the Commission is acting within the limits of the police power of the state; and as neither company has a vested right to remain where it is located as against the public's welfare, safety, and convenience, the order of the Commission requiring a greater horizontal separation of the two agencies is properly made.

[7] ID.—RELOCATION OF PARALLEL LINES—APPORTIONMENT OF COSTS BY COMMISSION — CERTIORARI. — Where a telegraph company and a power company maintaining parallel lines fail to agree upon a division of the costs of removal and relocation of a fractional portion of the lines of the telegraph company, so as to prevent induction interference, which costs are a joint charge against both within the provisions of section 36 of the Public Utilities Act, and the Commission fixes the proportion of the cost to be borne by each at one-half of the total cost of said charge, and it cannot be said that the Commission acted arbitrarily or oppressively in the premises, such order must be affirmed on *certiorari,* even though it should appear to the supreme court that the apportionment of the costs in favor of the telegraph company was not as large as that court might have allowed were it vested with jurisdiction to fix the amount.

----

(1) 20 C. J., p. 328, n. 12.   (2) 20 C. J., p. 328, n. 12.   (3) 20 C. J., p. 328, n. 12.   (4) 20 C. J., p. 316, n. 64.   (5) 20 C. J., p. 328, n. 12.   (6) 20 C. J., p. 326, n. 87.   (7) 20 C. J., p. 328, n. 12.

PROCEEDING in Certiorari to review an order of the Railroad Commission for the relocation of telegraph lines and for the apportionment of the cost thereof. Order affirmed.

The facts are stated in the opinion of the court.

Willard P. Smith and Kennett B. Dawson for Petitioner.

----

7. See 24 Cal. Jur. 487.

Carl I. Wheat and Woodward M. Taylor for Respondent.

Charles P. Cutten, Ralph W. Du Val and Wm. B. Bosley for Pacific Gas and Electric Company.

SEAWELL, J.—Application for a review of that portion of an order made by the Railroad Commission whereby petitioner was allowed one-half of the cost of relocating a portion of its telegraph line in certain areas in which it is closely paralleled by a high-power transmission line operated by the Pacific Gas and Electric Company, in order to prevent induction interferences to petitioner's telegraph line which, by reason of its close proximity to the power line of the Pacific Gas and Electric Company, renders induction unavoidable.

The terms "communication company" or "communication lines" as employed herein are meant to identify the petitioner or its telegraph line. The terms "transmission line," "power company," or "power lines" have a corresponding reference to the Pacific Gas and Electric Company or its property. The communication company and the transmission company are respectively public utilities operating under the authority of law.

On August 23, 1919, the Postal Telegraph Cable Company, a transcontinental telegraph system with telegraph and cable connections with various parts of the world—a portion of which system is situate within this state, under the laws of which it was organized and exists—filed a complaint against the Pacific Gas and Electric Company, a public utility engaged in this state in the business of furnishing electric power for general commercial purposes, by which it is alleged that in the year 1886 the Pacific Postal Telegraph Cable Company built, equipped, and began the operation of the telegraph line in question. The city of San Francisco was the point of beginning of said system, which extended easterly through Benicia, Suisun, Elmira, Dixon, Davis, and Sacramento to the easterly boundary of the state, thence to various parts of the continent. Said telegraph line was taken over by petitioner in 1908, and it has ever since been operated and maintained by petitioner in a safe and proper manner and in full compliance with the laws of the state of California and the rules and regulations of the Railroad

Commission of this state. In this connection it is further
alleged that the telegraph line was originally constructed in
a good and substantial manner and at all times since its
construction has been properly maintained, operated, and
equipped with the most modern and approved devices ob-
tainable for the prevention of electric induction into or
upon its communication wires. That the voltage used on or
over its line in the transmission of telegraphic messages
has at no time exceeded 350 volts and the amperage has
not exceeded one-tenth of one ampere. That the transmis-
sion company since October 4, 1905, has, between the city
of San Francisco and the city of Sacramento, for the trans-
portation of electric current and energy, maintained a pole
system consisting of copper wires strung upon wooden poles,
over which it transports normally an alternating electric
current of high potentiality, to wit, about 50,000 volts.

It is alleged, and is unquestionably a fact, that the induc-
tion interferences from which petitioner has and does now
suffer is the result, primarily, of the close proximity at
which the power company at the time of the construction of
its line—1900–1904—placed its pole lines with reference to
petitioner's line in the vicinity of Davis, Dixon, Vandeen,
and Elmira, and intermediate points between Suisun and
Davis for a total distance of five miles, parallel with peti-
tioner's line, making a parallel separation not greater than
twenty-two feet between the pole lines of said transmission
and communication companies, and at another section, for
a distance of eight miles, with a horizontal separation not
greater than twenty-four feet. Other parallelisms too nar-
row for the safe and efficient management of the communi-
cation line are alleged. It is also alleged, and found as a
fact by the Commission, that the normal disturbances from
which petitioner is troubled is seriously increased and ag-
gravated by defective construction and poor maintenance of
said power lines and the failure of said power company to
make needful repairs and improvements for the prevention
of surges; the overloading of the system with electric en-
ergy beyond its capacity; neglect to patrol its lines at
seasonable times; the violation, in certain instances, of the
laws of the state of California and the regulations of the
Railroad Commission governing the operation and mainte-
nance of said power lines, and a general state of deteriora-

tion into which said power lines have been allowed to pass. There is no dispute as to the physical facts so far as parallels are concerned. At no point are the two pole systems after leaving the Alameda County line eastward to Sacramento, a distance of approximately seventy miles, placed at a greater distance apart than 210 feet.

As a result of said inductive interferences, which cause buzzing noises and confusion of sounds, the transmission of messages is made difficult, if not impossible, and long delays in the transmission of messages are of frequent occurrence. Petitioner's equipment has frequently been burned out or damaged by surges of electric energy passing over the wires of the power company, the result of improper maintenance, operation, and a too close contact of the lines of said company. There is no doubt but that petitioner has sustained damage and has suffered much inconvenience from the inductive interferences arising from an indisputable situation. The communication line being by far the weaker in electric voltage, and being compelled from necessity to use instruments and devices in the transmission of messages which are delicate and highly sensitive to air waves and atmospheric and electric disturbances, renders it impossible for it to successfully combat induction disturbances which are rendered unavoidable by the close proximity of the wire lines and cannot be prevented even by the employment of the most modern and approved methods known to electrical science or skill. It is practically admitted that the efficient management and control of petitioner's property, as well as the safety of the general public and the employees of both companies, require that the parallel separation between the pole lines of said companies be not less than 500 feet.

The prayer of petitioner was that the Commission either require the power line to repair, reconstruct, and equip its power lines so as to prevent surges thereon or to remove its line between the cities of Sacramento and Suisun a sufficient distance from petitioner's line to prevent induction thereupon, "and for such other, further and different relief as may appear just in the premises," and for costs.

The answer of the power company alleges that it owns and operates two 60 K.V. lines from Suisun to Davis, a distance of about twenty-seven miles, which were originally constructed by the Bay Counties Power Company in 1900,

and one 60 K. V. line from Davis to Sacramento, a distance of thirteen miles, constructed in 1904. Both of said lines, for the greater portion of the distance here involved, are operated on the private right of way of each company and are adjacent to the right of way of the Southern Pacific Company. As to the allegations that said power lines are or ever were poorly constructed, or have at any time been poorly maintained, operated, or equipped in violation of any law or statute or rule of any commission or in any respect whatsoever, said power company made specific denials. In short, it denied that any act done by it or failure or omission or neglect to perform any duty imposed upon it by law had caused the communication company any damage or injury whatever.

The Commission, after hearing a great mass of expert evidence upon the issues involved, extending over a long period of time, made an order that the petitioner, Postal Telegraph-Cable Company, submit for its approval, within sixty days of the date thereof, plans for the relocation of its circuits between the cities of Elmira and Davis, to a new position along the northerly side of the Southern Pacific Company's right of way between Elmira and Davis or in another location equally distant from the circuit of said power line. A similar order was made directing the removal of petitioner's circuits in the vicinity of the town of Vandeen within that section where its circuits paralleled the power circuits on the same side of the Southern Pacific Company's right of way to a position along the southerly line of said Southern Pacific Company's right of way, or to another location equally distant from said power line company's circuit.

The order as to the matter of cost resulting from said changes of location was that said cost should be equally borne by the communication and transmission lines, respectively.

Petitioner filed in due course of time an application for a rehearing. Said application insisted that inasmuch as it had been found by the Commission that the close proximity of the circuits of the contending parties caused serious and unavoidable interferences upon the lines of the petitioner of such a nature and to such an extent as to warrant the increase of the separation, any order requiring it to bear one-half of the cost resulting from said change was unlaw-

ful. The Commission was requested to modify its order by providing that the entire cost of relocation be borne by the power company. As a final request, the petitioner prayed that the order "be modified so as to require the entire expense of relocation, except the cost of new equipment in place of old, be met by the defendants (power company) and that the question of relocating the lines between Davis and Sacramento and between Elmira and Suisun be left open until the result of the changes ordered to be determined, and the foregoing application for a rehearing be granted, and an order made to that effect."

[1] Petitioner urges in this court as specific grounds for the annulment of the Commission's order, violations of those clauses of the state constitution (art. I, sec. 14) and the federal constitution (fourteenth amendment), which provide that private property shall not be taken or damaged for public use without just compensation having first been made to the owner, and the due process and equal protection clauses (fourteenth amendment) of the federal constitution. None of these grounds were specifically set forth in its application for a rehearing by the Commission. Section 66 of the Public Utilities Act (Stats. 1915, p. 115) provides that an application for a rehearing of any order or decision made or given by the Railroad Commission "shall set forth specifically the ground or grounds on which the applicant considers said decision or order to be unlawful. No corporation or person shall in any court urge or rely on any ground not so set forth in said application." It must be conceded that in setting forth the grounds upon which the unlawfulness of the order was alleged to be vulnerable to attack, it did not specifically set forth any of the constitutional objections which are urged before us in this proceeding as grounds sufficient to compel the annulment of the Commission's order. The validity of the limitation placed upon the control of the courts of this state by the provisions of sections 66 and 67 of the Public Utilities Act has been definitely settled by the cases of *Pacific Telephone & Telegraph Co.* v. *Eshleman,* 166 Cal. 640 [Ann. Cas. 1915C, 822, 50 L. R. A. (N. S.) 652, 137 Pac. 1119], *Clemmons* v. *Railroad Com.,* 173 Cal. 254 [159 Pac. 713], *Marin Municipal Water Dist.* v. *North Coast Water Co.,* 178 Cal. 324 [173 Pac. 473], *San Leandro* v. *Railroad Com.,* 183 Cal. 229 [191 Pac. 1], and other more

recent decisions of this court. In *San Leandro* v. *Railroad Com., supra,* speaking to the point that petitioner had not specifically set forth in its application for a rehearing a ground which it was then urging in this court for the annulment of the order, we said: " . . . petitioners failed to specifically set forth the alleged failure to fix a rate base in their applications to the Commission for a rehearing, and are, therefore, precluded by the terms of section 66 of the Public Utilities Act from urging the objections in this Court."

A situation practically identical with the one here presented was before the supreme court of Missouri. Section 10 of the Public Service Act of that state provided that "No corporation or person or public utility shall in any court urge or rely on any ground not set forth in said application" (referring to a rehearing). A constitutional question not raised by the applicant in its petition for a rehearing before the Commission was urged in the circuit court and supreme court. The court refused to entertain the question, and tersely said: "The constitutional question injected into this controversy for the first time in the petition for review was not timely. How, without a contradiction in terms, can a matter be reviewed which has not been viewed. . . . " (*State ex rel. Buffum Telephone Co.* v. *Public Service Com.,* 272 Mo. 627 [L. R. A. 1918C, 820, 199 S. W 962].) While we feel that we would be fully justified in dismissing from consideration the constitutional questions which are specifically set out in the brief of petitioner and referred to in less specific language in the petition for the writ and which were not specified as a ground of unlawfulness in the application for a rehearing before the Commission, other reasons impel us to give consideration to the constitutional questions within the limitations which petitioner itself has placed upon them.

The induction disturbances complained of are not of recent or sudden development, but have existed in a noticeably increasing degree since about 1909, and were officially brought to the attention of the Commission by petitioner in 1919. It has been a vexatious problem with the Commission for a number of years. At its behest joint conferences were called with the view of devising some plan or means by which the increasing induction disturbances might be minimized or suppressed. The officers of both companies, both

before and after the order of relocation was made, and their expert electricians and engineers met in counsel with the Commission and its engineers upon a number of occasions in an endeavor to hit upon some practical solution of a difficult problem. After much experimentation, investigation, and many negotiations and discussions the Commission was forced to the conclusion that there was but one practicable, reasonable solution of the question which would afford petitioner relief from induction troubles, to wit, a wider horizontal separation of the pole lines of the respective companies. The soundness of its conclusion is not questioned. Neither is the right of the Commission to compel the petitioner to relocate its lines challenged. It is conceded by petitioner that if the Commission had made an order requiring petitioner to relocate its lines and had assessed the power company with the entire cost of such relocation, it would have been a valid order and the Commission's authority in such a case would have been regularly pursued. [2] In other words, the jurisdiction or power of the Commission to determine the question it had taken hold of depended— in the view of petitioner—upon whether it had acted wisely or unwisely in the determination of the issue submitted. Such, of course, cannot be the rule. Failure to make an equitable apportionment of costs would constitute nothing more than error of judgment. Petitioner's contention, in short, is that the telegraph line having been built and operated some fourteen years prior to the construction of the power line and the induction disturbances being caused by reason of the existence of such power line, *ex proprio vigore* prohibited the making of but one decision or order. Petitioner thus states its position: "The only question before the court is whether or not fifty per cent constituted just compensation, but we consider it necessary to explain the basis of our claim so that the court can see why we are entitled to the relief which we now ask. Our right is based on prior occupancy and we will therefore discuss the rights of a prior occupant. The commission has decided that we are prior occupants and entitled to relief, so that the question is not really before this court, but its discussion is necessary to understand our claim." Again, the closing words of petitioner's written argument are in these words: "That part of the order of the railroad commission requiring petitioner

to pay one-half of the cost of relocating its own line should be annulled.'' Thus it appears that petitioner does not take the position that the Commission was without jurisdiction or authority to require it to relocate its lines at certain points in order to prevent the difficulties and dangers sought to be remedied for the reason and on the ground that it was first in point of time in the construction of its line, but insists that such priority gave it the absolute right to demand and receive the entire cost of the relocation of any portion of its line, if such should be the order of the Commission, and under no possible set of circumstances would the Commission be justified in awarding a lesser amount than the full amount of said costs. The question of priority was considered by the Commission in making its apportionment of costs as between the companies affected and its *résumé* of the situation follows:

''The method of dividing the cost between utilities whose lines are involved in a parallel and which require reconstruction, relocation or other changes, heretofore followed by this Commission, has been to require the utility in whose plant any capital addition is made to bear the cost of that added plant, and that changes other than capital charges in either the power or communication circuits, including the cost of remedial measures, be paid for by the party creating the parallel and ·the cost resulting from the planning or determination of the necessary remedial measures to be paid for by the utility making the same.

''The evidence in this proceeding shows that both the power and communication circuits have been in operation for many years and long before the question of inductive interference was given serious consideration. Since that time changes have been made by both utilities in their circuits. In view of the history of the lines involved in this matter, it does not appear that the question of priority of construction should be given material weight in determining the responsibility of payment of costs resulting in the mitigation of interference.''

[3] The departure by the Commission from its own precedent or its failure to observe a rule ordinarily respected by it is made the subject of criticism, but our reply is that this is not a matter under the control of this court. We do not perceive that such a matter either tends to show that

the Commission had not regularly pursued its authority, or that said departure violated any right of the petitioner guaranteed by the state or federal constitution. Circumstances peculiar to a given situation may justify such a departure.

[4] We are not here concerned with any monetary damages which may have accrued to petitioner against the power company because of the negligent or improper construction or maintenance of its circuit system. The Commission did not have jurisdiction to adjudicate such an issue. The question germane to the Commission's duty was whether the two companies could exist in their present location and perform public services under grant of the laws of the state with due regard to public efficiency and the safety of person and property. The Commission undertook to exercise its power, upon complaint by the petitioner, in accordance with the provisions of section 36 of the Public Utilities Act.

It is to be kept in mind that at the time the power line was constructed possible induction interferences were not considered or thought of by the builders of either of said lines and no serious inconveniences were felt until a number of years thereafter. The communication line, which from the beginning was also the carrier of the circuits of the Western Union Telegraph Company and the signal circuits of the Southern Pacific Company—and later the Pacific Telegraph and Telephone Company circuits—added three circuits to its line in 1909. Later it added to its original system automatic equipments which included the installment of the multiplex equipment. The instruments now used are a vast improvement over the manual equipments formerly used in telegraphy and are delicate and highly sensitive to electric disturbances. There is evidence in the record to the effect that the changes made by the communication line rendered their instruments and system more susceptible to normal induction than they had been before said changes were made. Since 1909 the petitioner has carried nine wires upon its poles and the number of messages sent over its wires has greatly increased during the past ten or fifteen years, thereby making the inductive disturbances more noticeable in recent years than during the earlier history of the circuits. There is also testimony in the record to the effect that the changes above pointed out had a tendency to in-

crease inductive disturbances in the wires of petitioner. [5] Another reason which moved the Commission to make its order directing the relocation of a portion of petitioner's line was that the cost of relocating the power lines was estimated approximately at $120,000, whereas the cost of relocating petitioner's was estimated at about $22,000. This of itself was a legitimate matter for the consideration of the Commission.

Much law has been written, and many divergent opinions expressed, upon the question as to whether or not the first grantee of a franchise has superior rights over a junior licensee, and whether, so long as the first licensee is not disturbed in its occupancy, it must submit to such unavoidable inconveniences as may result from a reasonable and fair exercise of the junior licensee's franchise, and whether damages which are merely a natural incident to and the direct and immediate result of the junior licensee's operations are actionable, and will be enjoined. The authorities on this interesting subject may be found collated in 20 Corpus Juris, pages 314, 315 et seq. We do not think the Commission was called upon to decide upon which side of these momentous questions the weight of authority is to be found. [6] It was not created merely to act as an arbiter of disputes between private electric companies, but to promote the public interest and safety generally. In making its order the Commission was acting within the limits of the police power of the state and as neither company had a vested right to remain where it was located as against the public's welfare, safety, and convenience, its order directing a greater horizontal separation of two dangerous agencies was properly made.

We entertain no doubt but that the authority of the Commission extends to a correction of just such dangers as were shown to exist in the instant case. No one would dispute the right of the Commission to require a separation of two railroad tracks built so closely together as to endanger the safety of passengers and the general public, or its power to order a wider separation of two high-power electric lines so close in parallel as to be an admitted menace to life and limb. The difference between the instanced cases and the instant case is in degree only.

[7] Said public utilities having failed to agree upon a division of the costs of the removal or relocation of a fractional

portion of petitioner's telegraph line and the cost thereof being a joint charge against both within the provisions of section 36 of the Public Utilities Act, and the Commission having fixed the proportion of the cost to be borne by each at one-half of the total cost of said change, and inasmuch as it cannot be said that the Commission acted arbitrarily or oppressively in the premises, its order must be affirmed even if it should appear to us that the apportionment of costs in favor of the petitioner was not as large as we might have allowed, were we vested with jurisdiction to fix the amount.

The order is affirmed.

Richards, J., Lawlor, J., Myers, C. J., Shenk, J., Lennon, J., and Waste, J., concurred.