[S. F. No. 11203.   In Bank.—October 31, 1927.]

POSTAL TELEGRAPH–CABLE COMPANY, Appellant, v. PACIFIC GAS AND ELECTRIC COMPANY, Respondent.

[1] NUISANCES—HIGH POWER ELECTRIC CURRENT—INTERFERENCE WITH TELEGRAPH AND TELEPHONE SERVICE.—The installation and maintenance of lines for the transmission of high voltage currents of electricity so near the lines of a telegraph company as to induct said currents into the latter lines and interfere with the trans-

---

1. Liability of power company' for damage caused by induction conduction, or electrolysis, note, 33 **A. L. R.** 380. See, also, 9 R. C. L. 1230.

mission of messages thereover, causing substantial damage thereto and disturbance in the service, and at times completely preventing the same, does not constitute a continuing nuisance, within the meaning of section 3479 of the Civil Code, for which the telegraph company can recover damages.

[2] ID.—PLEADINGS—NEGLIGENCE—GENERAL ALLEGATIONS.—In a complaint by the telegraph company against the power company to recover damages in such a case, general allegations of negligence on the part of the defendant in the construction and maintenance of its power lines, which neither state the time, place, nor the nature of the negligence relied upon, are insufficient and a special demurrer thereto is properly sustained.

(1) 20 C. J., p. 315, n. 54.    (2) 20 C. J., p. 315, n. 56.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. Daniel C. Deasy, Judge. Affirmed.

The facts are stated in the opinion of the court.

Willard P. Smith for Appellant.

Thomas J. Straub, Leo H. Susman, and Chas. E. Finney for Respondent.

LANGDON, J.—Plaintiff appeals from a judgment against it after a demurrer to the complaint had been sustained and plaintiff had declined to amend. The complaint, after alleging the corporate capacity of the parties and the nature of their respective businesses, as disclosed by their corporate names, sets out, in the first count, that one of the power lines of the defendant extends from the city of Sacramento to the city of Suisun, a distance of about forty miles, over which the defendant transports normally an alternating electric current of high potentiality of about fifty-three thousand volts and that said line parallels the portion of said plaintiff's telegraph line for the entire distance between said cities, "being at no point more than two hundred and ten feet from the line of plaintiff and for a distance of about eight consecutive miles between said cities not more than twenty-one feet from plaintiff's line, and for a distance of five consecutive miles between said cities not more than 25 feet from plaintiff's line; and that the portion of said lines

of defendant between said cities was constructed many years after the construction of plaintiff's said line.''

It is then alleged that by reason of the said high voltage of defendant's line, ''there extends in all directions about it, a field of force for more than two hundred ten feet, and said field of force carries within such field many electric currents of high and varying intensity which are not controlled by or confined to said power lines and due to said proximity and parallelism of plaintiff's and defendant's said lines between said cities of Sacramento and Suisun, and the fact that said field of force extends in every direction about its said power lines and carries within such field many currents of high and varying intensity which are not controlled by or confined to said power lines, a portion of the electric current transported by defendant on said lines is at all times inducted on to plaintiff's said lines, thereby interfering with the transmission of telegraphic messages thereover and greatly decreasing the quickness and accuracy with which telegraphic messages can be transmitted over plaintiff's said line as compared with what would be the case if such induction did not exist. That said inductive interference has been increasing within the past three years and particularly interferes with the use of machine transmission of messages, and at times completely prevents the operation of said machines. That there have been within the past three years interruptions and breaks in the said lines of the defendant, causing at such times the current passing through defendant's said line to surge and rise in voltage, and said high voltage to be inducted on to plaintiff's said line between said cities whereby the said portions of plaintiff's said telegraph line and equipment thereof in this state have been burned out, destroyed and damaged, and on many occasions it has been impossible, for several hours at a time, to transmit telegraphic messages over said line, and the physical damage to plaintiff's said line and the equipment thereof, from such surges and induction, within three years last past has amounted to the sum of two thousand dollars.''

[1] Appellant contends that these allegations constitute the defendant's power lines a nuisance, within the meaning of section 3479 of the Civil Code. On the other hand, the respondent maintains that a distinction exists between cases where a plaintiff has been making an ordinary use of his

property and is prevented from doing so by inductive interference, and cases where both plaintiff and defendant are making an extraordinary use of their property and inconvenience results to one in this extraordinary use of his property by reason of the use of the other. The case of *Eastern & S. A. Tel. Co.* v. *Cape Town Tram Co.*, (1902) C. C. 381, 2 British Ruling Cases, 114, 126, contains the following language: "A man cannot increase the liabilities of his neighbor by applying his own property to special uses, whether for business or pleasure. The principle of *Ryland* v. *Fletcher*, which subjects to a high liability the owner who uses his property for purposes other than those which are natural, would become doubly penal if it implied a liability created and measured by the non-natural uses of his neighbor's property."

In the instant case the use of each party is extraordinary, and each makes a similar use, though different in degree. The distinction between the rights of parties thus situated and the respective rights of parties where one is engaged in the ordinary development of his land and the other is subjecting his land to an extraordinary use is pointed out in the case of *Lake Shore & M. S. Ry. Co.* v. *Chicago etc. Ry. Co.*, 48 Ind. App. 584 [92 N. E. 989, 991, 95 N. E. 596], where the court says: "This controversy is between users of electricity; appellant using light currents, and comparatively delicate instruments, which are interrupted by escaping currents from the wires carrying exceedingly high voltage belonging to the appellee. It is not a question between one engaged in the ordinary development of his land and the customary and appropriate employment of it according to its inherent qualities and its surroundings, without bringing upon it artificially any substance not naturally found there (*Evans* v. *Reading etc. Co.*, 160 Pa. 209 [28 Atl. 453]), and one engaged in the unnatural and extraordinary use of his property, calling for the application of the maxim '*Sic utere tuo,*' etc., which is the governing principle in *Fletcher* v. *Rylands* [1 L. R. Exch. 263], *supra,* and *Rylands* v. *Fletcher,* L. R. 3 H. L. 330. In this case the use of electricity is common to both parties, and both are acting under legislative grants. In such cases, it seems to be the consensus of opinion, both in England and in this country, that where one is acting under legislative authority, and

202 Cal.—25

within the right thus given, and reasonably within the exercise thereof, using care and caution regarding the rights of his neighbor, any inconvenience or incidental damage which may arise in the absence of any negligence, from the reasonable use of his own property will be regarded as within the rule *damnum absque injuria.*"

In *Phillippay* v. *Pacific Power & Light Co.*, 120 Wash. 581 [23 A. L. R. 1251, 207 Pac. 957, 211 Pac. 872], the telephone company brought action against the power company for the cost of metallicizing a telephone line to prevent inductive interference and for loss of profits occasioned by such interference. A judgment for plaintiff was reversed upon appeal. This case reviews, at some length, the conflicting authorities concerning the relative rights of telephone and telegraph companies and power companies and accepts the rule of nonliabiilty for inductive interference, using the following language: "The appellant contends that it, being rightfully on the highway by reason of a franchise properly granted, was under no duty of metallicizing or bearing the cost of metallicizing of the telephone line. The respondent contends that, since the power line interfered with the use of the telephones, that company should bear the expense of metallicizing. The controlling question, then, is whether the power company was under obligation to bear such cost. This question is one of first impression in this court. It should be remembered, in considering the question, that the telephone company did not own the land through which, with its single line system, the current returned to the point of origin. The weight of authority, so far as the question has been determined, is in favor of nonliability of the power company.'"

The case of *Yamhill Co. Mut. Tel. Co.* v. *Yamhill Elec. Co.*, 111 Or. 57 [33 A. L. R. 373, 224 Pac. 1081], is in harmony with the view above quoted, as are the cases of *Postal Telegraph & Cable Co.* v. *Chicago etc. Ry. Co.*, 49 Ind. App. 697 [97 N. E. 20]; *Citizens Telephone Co.* v. *Ft. Wayne etc. Co.*, 53 Ind. App. 230 [Ann. Cas. 1916A, 132, 100 N. E. 309]. The rule is summarized in 20 C. J., page 315, as follows: "As has been said, however, the right of the first licensee is not exclusive. So long as it is not disturbed in its occupancy, it must submit to such unavoidable inconvenience as may result from a reasonable and fair exercise

of the junior licensee's franchise. Damages which are merely a natural incident to and the direct and immediate result of the junior licensee's operations are not actionable and such operations will not be enjoined. To give the prior licensee the right of action, the junior licensee must have been guilty of negligence, trespass or malice.''

The federal court rule also seems in harmony with the cases hereinbefore cited, for in *Cumberland Tel. & Tel. Co.* v. *United Elec. R. Co.*, 42 Fed. 273, 284 [12 L. R. A. 544], it was said: 'We think the obligation is upon the telephone company to adopt it, and that defendants are not bound to indemnify it; in other words, that the damage incidentally done to the complainant is not such as is justly chargeable to the defendants. Unless we are to hold that the telephone company has a monopoly of the use of the earth, and of all the earth within the city of Nashville, for its feeble current, not only as against the defendants, but as against all forms of electrical energy which, in the progress of science and invention, may hereafter require its use, we do not see how this bill can be maintained.''

[2] It seems unnecessary to multiply authorities to the same effect and we shall pass to the second cause of action, which was based upon negligence. In considering the complaint, we must remember that the demurrer interposed thereto was both general and special and when the order was made sustaining it, the plaintiff was given leave to amend, but declined to do so.

After reiterating the pertinent allegations of the first cause of action, the statement of the second cause of action continues: ''That the portion of defendant's power lines between said cities of Sacramento and Suisun, *and its power lines in various other portions of said State of California,* all of which are connected up with said power lines between said cities of Sacramento and Suisun, are negligently constructed, and defendant has at all times negligently failed to keep the same in repair, and the same are negligently constructed, maintained, operated and equipped; that old, weak, wooden poles, with single-pin insulators are used, and that many of said poles have rotted and broken off near the bottom, and have not been replaced by other poles, and have been imperfectly stubbed, and that said portions are too weak to properly support the wires strung on the same,

and that said wires are negligently placed so that the wires of plaintiff are within the field of force of said 53,000 volt current.

"That by reason of the premises, there have been breaks in the defendant's lines, causing the current passing through defendant's said lines to surge and immediately rise in voltage above the said 53,000 volts, and to be inducted on to the plaintiff's said line between said cities, whereby the same and *other portions of plaintiff's said line and equipment in this state* have been burned out, destroyed and damaged; and that the physical damage to plaintiff's said lines and equipment thereof from such surges and induction has been $2,000."

It needs no citation of authority to support a ruling against such general allegations. Defendant is not required to meet, without notice, evidence regarding lines of plaintiff and defendant all over the state of California. Neither the time, the place, nor the nature of the negligence relied upon are fixed by plaintiff's pleading and the special demurrer thereto was properly sustained.

In the exercise of its regulatory power, the Railroad Commission has already made an order, affirmed by this court, for the relocation of appellant's line, the cost thereof to be borne equally by appellant and respondent herein. (*Postal Tel. Cable Co.* v. *Railroad Com.*, 197 Cal. 426 [241 Pac. 81].) There is involved in this appeal, therefore, no question of a continuation of the difficulties and damage for which compensation is sought, and under the rule of the authorities herein cited, defendant is not liable for the damage caused under the circumstances set forth in the complaint.

The judgment appealed from is affirmed.

Richards, J., Seawell, J., and Curtis, J., concurred.

SHENK, J., Concurring and Dissenting.—I concur in the foregoing opinion in so far as it holds that the special demurrer to the second cause of action was properly sustained, but I dissent from that portion of the opinion which holds that the first count fails to state a cause of action. The first count in my opinion clearly alleges a continuing nuisance in that the defendant so installed and maintained its trans-

mission lines that its high voltage currents were inducted on to and interfered with the operation of the plaintiff's telegraph lines, causing substantial damage thereto. It is alleged that the induction interferes with the use of machine transmission of telegraph messages and at times completely prevents the operation of said machines.

Included in the definition of a nuisance is the obstruction to the free use of property. (Sec. 3479, Civ. Code; 20 Cal. Jur. 261.) Section 731 of the Code of Civil Procedure specifically provides for an action for damages for the maintenance of a nuisance and the complaint shows that the alleged inductive interference is the direct and immediate result of the defendant's use of its property. The question of the superior right of a subsequent licensee in a public street or highway by reason of the paramount right of the public in the service performed by the subsequent licensee is not involved in this case. Here the two corporations, each exercising rights under a public grant of franchise for the purpose, are maintaining parallel lines on private rights of way in such manner that the defendant, the junior licensee, is so exercising the right as substantially to destroy the use to which plaintiff, a prior licensee, is reasonably putting its property. It is true that each is exercising what is called an extraordinary use, but I fail to comprehend the distinction endeavored to be made between the mutual rights and obligations of those putting their property to such extraordinary use. The rule announced by the main opinion is too broadly stated. It must be conceded that wanton or negligent damage is actionable without regard to priority. And it may be assumed that the prior licensee may not complain of unavoidable inconvenience as a result of the junior licensee's operations. But when the interference by the junior licensee is avoidable and substantial damage ensues, a right of action should lie. As I read the numerous authorities cited in the briefs, this proposition cannot be successfully controverted. Reason and justice demand that it must be so. It is inconceivable that a junior licensee, merely because it has the right from the public to exercise the franchise and maintain its high tension power lines, may so exercise that right as to exclude the prior licensee from the exercise of its lawful rights when such interference may reasonably be avoided. The prior

licensee has the right to carry on its operations without substantial impairment. (Deiser on Law of Conflicting Uses of Electricity and Electrolysis, pp. 54–57, and cases cited.) That the damage claimed by the plaintiff herein is substantial is shown by the allegations of the complaint. That it is avoidable is evidenced by the order of the Railroad Commission in directing a separation of the lines sufficient to obviate the damage. (*Postal Telegraph Cable Co.* v. *Railroad Com.,* 197 Cal. 426 [241 Pac. 81].) The exercise of the police power is not here involved and in no sense may the damage alleged be reduced to *damnum absque injuria.*

Waste, C. J., concurred.