## Tri-County Electric Membership Corporation v. Meador.

March 19, 1940.

Robert M. Coleman, Judge.

N. Goebel Goad, Douglas Keen and Harold Howser for appellant.

N. F. Harper and W. D. Gilliam for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Reversing.

The judgment awards damages of $500 for interference by an electric light and power transmission line with a telephone line. The case was tried without a jury upon the pleadings and stipulation of facts, the material substance of which may be thus stated:

For thirty years or more the appellee, R. O. Meador, owned and operated a telephone exchange and system, serving 60 persons in and around the village of Holland, in Allen County. It is a one-wire system on poles located on public highways and with ground wires at the exchange and the residences of the patrons to complete the circuit. About a year before the institution of this suit by Meador, the appellant, Tri-County Electric Membership Corporation, under the auspices or with financial support of an agency of the federal government, erected a rural electric line and power system in the community. It is what is commonly known as a multigrounded "neutral" system, which is explained as one having a metallic return or neutral wire which is grounded at intervals for reasons of safety, efficiency and economy but which grounding is not necessary to its operation. The lines are in the same public highway for approximately eight miles and are separated by the width of the road, about forty feet, except for some 2,000 feet, where they are only six feet apart. Both parties are lawfully occupying the highway. It is agreed:

"That the inductive interference caused by the energizing of defendant's power line made the telephone service non-operative or useless to the plaintiff and his subscribers, and that defendant's engineers, agents and defendant itself could have reasonably anticipated the creation of such inductive interference and its effect on the telephone line and system."

It is further stipulated that this destructive electrical interference "would be materially reduced or perhaps

practically eliminated by making the telephone system a two-wire metallic system, but that the income that might reasonably be anticipated from such a system does not justify the expenditure necessary to metallicize the system." The appellant's electric power line is a modern type and its material and equipment and method of construction are like those commonly used in modern rural electrification systems.

We have the concrete question of whether a public telephone service, lawfully in the road for many years, may be interfered with to the point of destruction by another public service concern coming into the road lawfully with its equipment and operation without having to respond in damages.

It may be well to state that a wire carrying electric current creates a field of electricity by radiation and induces a certain amount of current into every other wire within that field. That is called "inductive influence." If it is a telephone line, a buzzing noise is the effect. There is a difference between "inductive" and "conductive" influence, the latter being transmitted or flowing through the earth or some other conductor. Note, 23 A. L. R. 1257. Since it is stipulated that the interference here is "inductive," or the disturbance caused by radiation, technically speaking, it would appear that the use of the earth in completing the circuit of the telephone line is not important, and yet, quite contradictorily, it is agreed that by using two wires instead of one and a grounded circuit the trouble could be remedied. It does not appear in the stipulation of facts whether the proximity of six feet along the 2,000 foot segment is the cause of the trouble, or whether it is the running of the wires along the entire way in the same road.

As the basic proposition, it must be considered that the question does not involve the use of a person's own land in such a way as to injure another, naturally or artificially by bringing some instrumentality upon it. Each party is where he has the right to be and on an equal footing with the other.

Cases are not wholly in accord if appraised by generalities. Some are distinguishable as being controlled by statute and others have been superseded by later

opinions conforming to the development of the science of electricity. Thus, Curtis, The Law of Electricity, Section 362, says that a telephone or telegraph company, having prior lawful occupancy of a highway, is entitled to continue in its possession unmolested from interference by an electrical company serving private individuals, and a subsequent occupant must not place its wires so close to those of the first occupant that they are likely to come in contact or to cause induction. See, also, Cumberland Telegraph & Telephone Company v. United Electric Railway Company, 93 Tenn. 492, 29 S. W. 104, 27 L. R. A. 236. But with practical unanimity the authorities recognize a limitation and declare that priority of franchise and occupancy of public ways by a company using electricity carries superiority of right only to the extent that it may require a subsequent similar licensee so to construct and operate its system as not to interfere *unnecessarily* with the exercise of the former's right. Cumberland Telegraph & Telephone Company v. Louisville Home Telephone Company, 114 Ky. 892, 72 S. W. 4, 24 Ky. Law Rep. 1676. The law is thus stated in 18 Am. Jur., Electricity, Section 31:

> "Where the use of electricity is common to both parties acting under public sanction, the consensus of opinion, both in England and in this country, is that where one is acting under legislative authority and within the right given, and reasonably within the exercise thereof, using care and caution regarding the rights of his neighbor, any inconvenience or incidental damage that may arise in the absence of negligence from the reasonable use of his own property will be regarded as within the rule damnum absque injuria. When one company is operating a low-tension wire and another is maintaining a high-tension wire, the plan evolved by the law seems to be to 'live and let live.' Each company should do its part to prevent unnecessary friction in the working of the two lines."

See, also, Lake Shore & M. S. R. Co. v. Chicago, L. S. & S. B. R. Co., 48 Ind. App. 584, 92 N. E. 989, 95 N. E. 596.

The factor which determines liability of the subsequent occupant of a public way is the failure to exercise

reasonable care in the use of his privilege not to disturb the use of the prior occupant. This failure may be negligence, as by faulty equipment or installation, or it may be merely doing something reasonably avoidable and unnecessary. Conversely, the one first obtaining a franchise or privilege to occupy a public way acquires the right not to be substantially molested in his possession by wanton or negligent damage or by interference which could be reasonably avoided by the junior licensee. But he must submit to such unavoidable inconvenience as results from a fair and reasonable exercise of the other's privilege or franchise. 9 R. C. L. 1194; 20 C. J. 314; Yamhill County Mutual Telephone Company v. Yamhill Electric Company, 111 Or. 57, 224 P. 1081, 33 A. L. R. 373; Postal Telegraph-Cable Company v. Pacific Gas & Electric Company, 202 Cal. 382, 260 P. 1101, 56 A. L. R. 414. See, also, the related annotation, "Right of public utility not having an exclusive franchise to protection against, or damages for, interference with its operations, property, or plant by a competitor." 119 A. L. R. 432.

The case of Phillippay v. Pacific Power & Light Company, 120 Wash. 581, 207 P. 957, 211 P. 872, 23 A. L. R. 1251, is like the one at bar. The receiver of a telephone company brought suit against an electric power company to recover the cost of installing a second or return wire of a one-wire system in order to prevent interference with its service by induction of current from defendant's transmission line and for the loss of profits occasioned thereby. The lines were parallel on the same highway. The court pointed out that in making use of the earth for its return current the telephone company was making use of something it did not own and was under a duty to equip its lines otherwise in order to prevent the interference. Damages were denied. Other like cases reaching the same conclusion are Southwestern Public Service Company v. Moore, 119 Tex. 391, 29 S. W. (2d) 329, and McCulloch County Electric Co-operative v. Hall, Tex. Civ. App., 131 S. W. (2d) 1019.

As above stated, the cause of the disturbance to appellee's telephone system is "inductive interference," the phenomenon to which the rule stated refers. The rights and duties of the related parties arising from

"conductive interference" are not the same, as was held in Yamhill County Mutual Telegraph Company v. Yamhill Electric Company, supra.

It is agreed in substance and effect that defendant was not negligent for it is admitted that its transmission line was erected and maintained according to good and modern engineering principles. It may be suggested that placing the power line within six feet of the telephone line for a distance of 2,000 feet was unnecessary and avoidable and that such proximity caused much of the disturbance. If plaintiff's petition be regarded sufficient to charge that the placing of the power line too close to the telephone line was unnecessary and reasonably avoidable, all such allegations were denied and the stipulation of facts is silent on that issue. The limit of the evidence as produced by the stipulation is the disclosure of the condition. The courts may not presume that the lines were too close, or assume that the condition was unnecessary, or that it was the cause of the electrical interference. The absence of an affirmative stipulation of a fact essential to a recovery has the effect, at least, of a failure of proof if not of a negation of the allegations of the petition. Cf. Murrel v. Allen, 180 Ky. 604, 203 S. W. 313. Concerning this state of case, we adopt the following from McCarthy v. Employers' Fire Insurance Company, 97 Mont. 540, 37 P. (2d) 579, 582, 97 A. L. R. 292:

"To sustain a judgment for plaintiff on an agreed statement of facts, the statement must show all the facts necessary to a recovery (Billings Hardware Co. v. Bryan, 63 Mont. 14, 206 P. 418), and must contain ultimate facts presenting only questions of law, and not circumstances which may tend to prove ultimate facts. Longmeyer v. Lawrence, 50 Okl. 457, 150 P. 905; Wilson v. Merchants' Loan & Trust Co., 183 U. S. 121, 22 S. Ct. 55, 46 L. Ed. 113."

Applying the law to the facts as stipulated, we are of opinion that the plaintiff did not establish a cause of action for damages, and that the judgment is erroneous.

It is therefore reversed.

Whole court sitting.