WESTERN UNION TEL. CO. v. LOS ANGELES ELECTRIC CO.

(Circuit Court, S. D. California. August 3, 1896.)

No. 656.

1. ELECTRIC WIRES—INTERFERENCE—INJUNCTION.

A bill by a telegraph company seeking to restrain the operation of electric light wires which have been placed so close to complainant's wires as to interfere with and injuriously affect the working of the latter need not state the distance at which an electric current on one wire will affect another, this being matter of evidence.

**2. SAME—PRIORITY OF RIGHTS.**

    A franchise to operate a telegraph line over any part of the United States domain, or any military or post road, acquired under Act Cong. July 24, 1866, when accompanied by occupancy thereunder, confers rights superior to those of a company subsequently constructing a line for transmitting electricity both for lighting purposes and for propelling machinery, and hence the latter line must be constructed so as not to interfere with the former.

R. B. Carpenter, for complainant.
Wm. A. Cheney, for defendant.

WELLBORN, District Judge. Complainant, a New York corporation, sues to restrain defendant, a California corporation, from operating the latter's line of electric wires on Second street, in the city of Los Angeles, Cal. The present hearing is on a demurrer to the bill. The pertinent matters therein alleged, briefly stated, are these:

Complainant owns and operates a telegraph system extending throughout the United States, and having its connections with the other countries of the civilized world. Most of its properties in this country have been constructed and acquired since June 12, 1867, at which date complainant filed with the postmaster general of the United States its written acceptance of the restrictions and obligations of the act of congress of July 24, 1866, entitled "An act to aid in the construction of telegraph lines, and to secure to the government the use of the same for postal, military, and other purposes," the provisions of said act being now found in the Revised Statutes of the United States (sections 5263 to 5269, inclusive). The first of these sections is as follows:

"Sec. 5263. Any telegraph company now organized, or which may hereafter be organized, under the laws of any state, shall have the right to construct, maintain and operate lines of telegraph through and over any portion of the domain of the United States, over and along any military or post roads of the United States, which have been, or may hereafter be declared such by law, and over, under, or across the navigable streams or waters of the United States; but such lines of telegraph shall be so constructed and maintained as not to obstruct the navigation of such streams and waters, or interfere with the ordinary travel on such military or post roads."

Second street, above mentioned, is a post road. 23 Stat. 3.

Since its acceptance aforesaid, complainant has in all things, and at all times, complied with the provisions of said act. In the year 1889 complainant erected poles and strung wires thereon, and thus constructed, as a part of its general system, and has since operated the same, a line along the north side of Second street in the city of Los Angeles, Cal. Over said line are sent governmental, commercial, and social messages, by way of the Santa Fé route and its various branches, throughout the civilized world. In respect to the messages of the government of the United States, complainant is the agent of said government, and, as to the messages transmitted between California and the other states of the Union and foreign countries, complainant is an instrument of interstate and foreign commerce. In May, 1895, while said line was thus in full operation, with 10 wires strung upon the cross arms of its poles, defendant constructed a line of poles in an exact line with those of complainant, and

strung its wires upon the cross arms of its poles, directly under the wires of complainant's line, and in many places so near to the wires of complainant's telegraph line aforesaid as to interfere with the working of complainant's wires, in consequence of the stronger electric current sent over defendant's wires. Defendant is engaged in the business of transmitting electric currents, at various points in the city of Los Angeles, for arc lights of 2,000 and 3,000 candle power, on poles from 25 to 130 feet high, and for incandescent lights, and for propelling machinery, and its said line along Second street is to be used for all these purposes. Defendant's wires, when charged with high-power currents, seriously interfere with the wires of complainant, by reason of induction, or that electrical influence which a current in one wire exerts upon another wire in close proximity. Defendant's wires, in order to transmit electrical currents for said arc lights, must be, and are, charged with very strong electrical currents, —four or five times stronger than the currents used by complainant in transmitting messages over its lines. The instruments necessary to be, and which are, used by complainant in the transmission of its messages, are delicate and sensitive, and, preparatory to transmitting signals, must be carefully balanced and adjusted, in accordance with the strength of the electrical current generated by the batteries in complainant's main office, and the conditions of the wires over which the signals are to be transmitted; and therefore the strong current sent over defendant's wires will disarrange, distort, and mutilate the telegraph signals of complainant's line, and will result in serious errors in the transmission and reception of the telegraphic messages of complainant. The breaking of complainant's wires, and their falling upon those of the defendant, as they are liable to do, would destroy complainant's instruments, and endanger the lives of its employés. The dangerous character of defendant's wires renders it difficult, if not impossible, to keep the complainant's lines in order. Complainant is operating under heavy penalties to the United States government, and is liable to its employés for personal damages. The grounds of the demurrer, as therein stated, are as follows:

"(1) That the complainant hath not, in and by its said bill, made or stated such a case as entitles it, in a court of equity, to any relief against defendant as to the matters contained in the said bill, or of any such matters. (a) It does not set forth, state, or allege that this defendant prevented, or has been preventing, or will prevent the complainant from using the post roads, or any of them, of the United States. (b) It does not appear from its said bill that the complainant has not a speedy and adequate remedy at law, or that it will suffer irreparable damage by any act on the part of this defendant. (c) The said bill does not show any exclusive right in this complainant, as against the defendant, to the use of the north side of Second street, in the said city of Los Angeles. (2) That the said bill is deficient in certainty, in that it does not in any manner show, or attempt to show, how far apart the wires of this defendant must be from the wires of this complainant in order to avoid the results of what is stated in said bill as 'induction,' nor how near said wires of this defendant must be to the wires of the complainant in order to cause the process set forth in the said bill as 'induction.' (a) And, further, that the said bill does not state or allege that this defendant has in any manner interfered with the wires of this complainant."

Complainant's franchise, by virtue of the act of congress of July 26, 1866, to construct, operate, and maintain a line on Second street,

is conceded; but defendant insists that said franchise is subject to reasonable local regulations, and does not include exemption from the burdens ordinarily cast upon those who exclusively appropriate parts of a public highway. Pensacola Tel. Co. v. W. U. Tel. Co., 96 U. S. 1; Telegraph Co. v. Pendleton, 122 U. S. 359, 7 Sup. Ct. 1126; Mutual Union Tel. Co. v. City of Chicago, 16 Fed. 309. While these authorities appear to sustain the limitations suggested by defendant, the facts of the case at bar do not raise for decision any question connected with such limitations. The material contention made in defendant's brief is that the bill does not show such an unlawful interference by defendant's wires with complainant's business as entitles the latter to equitable relief, because—First, the threatened injury is only a remote possibility, and not a certain or probable result; second, so far as concerns the right to occupy a street, the business of furnishing a city and its inhabitants with light is a higher use than that of telegraphing, and therefore defendant's right of occupancy is superior to that of complainant. These two points will be examined in the order in which they are stated.

1. In support of its first contention, defendant suggests that there is no statement in the bill of the distance at which an electric current upon one wire will affect, by induction, another wire. This, I think, is a matter of evidence, which need not be specifically set forth. The ultimate fact, in this connection, essential to complainant's case, and which should be alleged, is that defendant's wires have been placed so near to complainant's wires as to seriously impair the efficiency of the latter: and this situation, I think, is sufficiently shown. The bill alleges as follows:

"Said defendant has placed its poles in an exact line with those of your orator on said Second street, and its wires, so far as they are strung, and in so far as they will be strung if the line of defendant is continued to Alameda street, are directly under the wires of your orator, and in many places so near to the wires of the telegraph line of your orator aforesaid as to interfere with the working of your orator's wires, in consequence of the stronger electric current sent over the wires of said defendant, the Los Angeles Electric Company."

Furthermore, the bill, after alleging that the electrical currents to be transmitted over defendant's wires will be much stronger than those used by complainant, and that the instruments necessarily employed by complainant in the transmission of messages are delicate and sensitive, and must be adjusted with reference to the current generated by the batteries in its main office, and the conditions of the wires over which the signals are to be transmitted, proceeds thus:

"And therefore the induced current over the defendant's line will disarrange, distort, and mutilate the telegraphic signals of your orator's line, by interposing a foreign and stronger current, not under the control and not within the knowledge of the transmitting operator, and will result in serious errors in the transmission and reception of the telegraphic messages of your orator."

From these quotations it appears the bill does expressly and directly allege that the operation of defendant's line will seriously and prejudicially affect complainant's line.

2. Defendant contends in the next place that the lighting of a street is necessary to its primary use,—travel,—and that, therefore,

an electric company carrying on the business of such lighting has a paramount right of occupancy, as against a claim not founded upon such primary use. I have been able to find but one authority on this question, and that one is against the defendant, and expressed as follows:

"Sec. 223. Telegraph v. Electric Light. The use of the same street, or side of the street, for both telegraph and electric light wires, may bring up a question of which of the two uses of electricity is entitled to the precedence. The electric light wires carry, as is well known, a heavy and dangerous electric current, which may, in case of sagging or breaking of the electric light or telegraph wires, be distributed over the telegraph wires, and burn out the instruments, and endanger the lives and safety of the employés of the telegraph company. On the other hand, the wires may be so adjusted that both companies can use the same side of the street with safety. The question which of the companies must make this adjustment of its wires depends upon the question of which company was prior in its occupation of the streets with its wires. If the telegraph company has strung its wires along the street, and is carrying on the telegraphing business, the electric light company cannot, even under a municipal ordinance granting it such power, string its wires within such distance of the wires of the telegraph company, or in such a manner, as to create a danger such as has been specified above, and a court of equity will enjoin the electric light company from so stringing its wires. On the other hand, if the electric light company has already strung its wires, and is operating them, the telegraph company cannot compel it to remove them so as to allow it to occupy the street, even under the franchise and protection of the act of congress of July 14, 1866 (Rev. St. U. S. § 5263), unless in no other way can it avail itself of this franchise." Crosw. Electricity, p. 194.

This author seems to consider the two uses of telegraphing and electric lighting, so far as concerns their respective privileges in a street capable of sustaining both uses, of equal necessity, and, therefore, that prior occupancy gives the better right. Without deciding the point involved, I will say that defendant's argument, although opposed by the text quoted, would not, if defendant's sole business was that of lighting the streets, be without force. The act of congress of July 24, 1866, hereinabove mentioned, expressly provides that the franchise which it confers shall not interfere with "ordinary travel." Whether the electric lighting of a city by night so promotes this primary use of its streets as that a company engaged exclusively in the business of such lighting has, for its instrumentalities, a right of occupancy in the streets superior to the franchise acquired by a telegraph company under the aforesaid act of congress, is a question carefully to be weighed when presented for decision. It does not arise, however, in the case at bar, as the defendant is engaged in transmitting electricity, not only for lighting purposes, but also for propelling machinery. As against this latter use, a franchise acquired under said act of congress, I think, confers a superior right, where the right, as here, is fortified by prior occupancy. The demurrer is overruled, and the defendant assigned to answer the bill at the rule day in September next.