SOUTHWESTERN PUBLIC SERVICE COMPANY v. R. L. MOORE ET AL.

No. 5547. Decided June 25, 1930.
(29 S. W., 2d Series, 329.)

*Underwood, Johnson, Dooley & Simpson,* for appellant.

Since the alleged grievance was manifestly insufficient to constitute any legal cause of action, the appellant's general demurrer directed against the plaintiffs last amended petition in this cause should have been sustained, instead of being overruled, by the trial court. Phillipay v. Pac. P. & L. Co., 23 A. L. R., 1251; Cumberland T. & T. Co. v. Union Elec. R. Co., 12 L. R. A., 544; Citizens Tel. Co. v. Ft. Wayne Elec. R. Co., 100 N. E., 309; Cincinnati etc. R. Co. v. City etc. Assoc., 27 N. E., 890; Postal Telegraph & Cable Co. v. Pac. Gas & Elec. Co., 260 Pac., 1101, 56 A. L. R., 441; Hudson River Telephone Co. v. Watervliet etc. Co., 135 N. Y., 393, 17 L. R. A., 674, 31 Am. St. R., 838, 32 N. E., 148; Louisville etc. Co. v. Cumberland etc. Co., 111 Fed., 663.

The trial court should have rendered judgment upon the verdict in this cause, in favor of appellant, to the effect that appellees take nothing and appellant go hence without day with its costs, because the theory of liability adopted by appellees was expressly predicated upon alleged negligence, and the verdict of the jury returned herein conclusively acquits and absolves appellant of any such alleged negligence.

Since it appears from the undisputed proof that the specific reason that the electric line interfered with the telephone line was because said telephone line was a ground circuit line, using the earth as an instrumentality in its operations, and there is no contention that the owners of said telephone line owned the earth that they were using for such purpose, accordingly they could not have any vested or paramount right to such use, and any incidental interference

therewith caused by the lawful business operations of another company dealing with electrical current could not give rise to any cause of action in favor of the owners of said telephone line, and therefore the trial court instead of refusing appellant's requested peremptory instruction, should have given same.

Said constitutional provision in cases where it is applicable, does not create or impose a greater or different degree or measure of liability upon persons armed with and exercising the power of eminent domain, than would exist if some one not armed with such power had done the same act under investigation, in the particular case.

Austin v. Augusta etc. Ry. Co., 47 L. R. A., 755; Hyde v. Minn. etc. Ry. Co., 136 N. W., 92, 40 L. R. A. (N. S.) 48; Rigney v. Chicago, 102 Ill., 64; Smith v. St. Paul etc. R. R. Co., 70 L. R. A., 1018, 109 Am. St. R., 889 (note); Texas & Sabine Ry. Co. v. Meadows, 73 Texas, 32.

*Shannon, Ochsner & Pheiffer,* for appellees.

The telephone lines and system and right of way of the appellees constituted property and when appellant so constructed and so operated its power line in serving the public that appellees' property was damaged as proven in this cause, the appellant became liable to the appellees for said damage under the provisions of Article I, Section 17 of the Constitution of the State of Texas. In view of said Article I, Section 17, the judgment of the trial court rendered upon the verdict of the jury was correct. 10 R. C. L., Eminent Domain, Sections 145–149; G. C. & S. F. Ry. Co. v. Fuller, 63 Texas, 467; Gainsville, H. & W. Ry. Co. v. Hall, 14 S. W., 259; Daniel v. Ft. Worth & R. G. Ry. Co., 72 S. W., 578; T. & P. Ry. Co. v. Edrington, 101 S. W., 441; Texas Power & Light Co. v. Jones, 293 S. W., 885; Texas Interurban Ry. Co. v. Halford, 299 S. W. 277; Jones County v. Moore, 4 S. W., (2d) 289; Garner v. Chicago, R. I. & G. Ry. Co., 10 S. W., (2d) 132; Hidalgo County, etc., v. Holderbaum, 11 S. W., (2d) 263; City of Waco v. Roberts, 12 S. W., (2d) 263; Paris Electric Light & Ry. Co. v. Southwestern Telegraph & Telephone Co., 27 S. W., 902; Cumberland T. & T. Company v. United Electric Ry. Co. (Tenn.) 29 S. W., 104; Indianapolis & C. Traction Co. v. Arlington Telephone Co., 47 Ind. App., 657, 95 N. E., 280; Northern Telephone Company v. Iowa Telephone Co., 93 N. W., 113; Rutland Electric Light Co. v. Marble City Electric Light Co., 20 L. R. A., 821, 26 Atl., 635; Los Angeles

Gas & Electric Company v. Los Angeles, 241 Federal, 912, 251 U. S., 32, 64 L. Ed., 121.

The right of recovery for injury or damage to property caused by the erection of a power line by a public service company is not based upon negligence in the construction or operation of said power line and the allegations of negligence contained in a petition to recover said damage may be treated as surplusage.

MR. JUDGE LEDDY delivered the opinion of the Commission of Appeals, Section B.

The Court of Civil Appeals for the Seventh Supreme Judicial District presents certified questions. The certificate is as follows:

"This suit was instituted by appellees R. L. Moore and L. J. Ingram against the appellant service company, asserting as a cause of action that prior to 1928 the plaintiffs, as partners, owned and operated a rural telephone line out of Amarillo north along the public highway for several miles. That it was a ground circuit system and in 1928 the defendant company erected a high voltage power and electric line along the same highway and in close proximity to the plaintiff's telephone line. That said power line was, for a considerable distance, constructed within a few feet of said telephone line and in some places within a few inches and at first the wires belonging to defendant touched the wires of the telephone line. That when the power line was completed and the current turned on, interference resulted, causing a loud buzzing sound over the telephone line, rendering it impossible to use the telephone line. That the defendant company was negligent in constructing the power line in such close proximity to the telephone line and knew in advance that the telephone line was a ground circuit system and that the construction and operation of the power line would interfere therewith. That the defendant could and should have erected its power line at a sufficient distance from the telephone line so as not to interfere and that one-half mile away is and would have been a reasonable distance. That such interference with the telephone line made it necessary for the plaintiffs to remodel and convert their line into a metallic system that is, it required them to use wires for the electric current instead of the ground, as theretofore. That in making the change from the ground to the wire circuit system, they were required to purchase additional wire, crossarms and insulators and while said change was being made, plaintiffs lost the revenue derived from their telephone line for a period of

thirty days, which, together with the cost of the new material and necessary labor in making the change, amounted to the total sum of $111.18. Liability of the defendant is claimed by reason of the negligent construction of the power line and for the further reason 'even though the obvious character and nature of plaintiffs' system of telephone poles and wires put the defendant on notice of the manner in which said telephone system was and always had been operated and conducted and that the erection and operation of the high voltage line in such close proximity would so interfere with the plaintiffs' telephone system and service as to cause material damage, still the defendant, in utter disregard of such knowledge and notice, did wilfully erect and operate its power line, thereby causing plaintiffs the damages as herein alleged.' The petition further states 'that it was the duty of the defendant not to interfere with the rights of these plaintiffs in the reasonable use and enjoyment of their said River Road telephone line and telephone system.'

"The defendant interposed a general demurrer, certain special exceptions, a general denial, and affirmatively alleged, in substance, that the service company is a public service corporation, engaged in distributing electrical power to the public under the laws of the State of Texas. That for the purpose of serving the public, it did, in the month of March, 1928, begin the construction of its power line for a part of the way near the public highway leading north out of Amarillo and known as the River Road. That its power line was constructed in a scientific, workmanlike manner, according to the most modern and approved engineering means and has been used to transmit electricity for distribution for light, heat and power to consumers living in the vicinity of said line and has been operated in the usual and ordinary manner. That its line is located and constructed near the telephone line in question only for a part of the distance, because a large number of the consumers served by the power line lived along the highway where said telephone line was constructed. That the telephone line was an old, delapidated, antiquated and obsolete line, far behind modern telephone standards and was what is known as a ground circuit system, which is a type known to be inefficient and unreliable and has been practically abandoned all over the country. That any interference with the telephone line resulting from the construction and operation of the power line was unavoidable in the nature of things, in spite of the fact that the power line was constructed and operated in the most modern and approved manner. That it could not have been used

and operated without interference with the telephone line and that the damages, if any, are due, not to the lack of skill or care on the part of defendant, but simply on account of the fact that the antiquated and obsolete character of the telephone system was susceptible to interference from any other electric current transmitted and used in a lawful manner and for lawful purposes. That all that was necessary to obviate such interference was to modernize the telephone line by converting same into a metallic circuit system, and by bringing same up to the standard, it was entirely possible to eliminate such interference. That all expenses incurred by plaintiffs in modernizing their telephone system converted it into a more practical line and rendered it a more valuable physical property and by reason thereof it has enhanced in value full as much as the cost of betterments and that plaintiffs have in that way been fully compensated and received full consideration for any such investment.

"In response to issues submitted, the jury found, in substance, as follows:

"(1) That the service company constructed its power line in such close proximity to the telephone line as to interfere with the use of. the telephone line by patrons thereof;

"(2) That the service company was not negligent in so constructing its line;

"(3) That the construction of the power line rendered it reasonably necessary to change the telephone line from a ground to a metallic circuit;

"(4) That the reasonable and necessary cost of making the change was $843.90;

"(5) That the telephones connected with the telephone line were rendered unfit for service immediately following the sending of electricity through the power line;

"(6) That thirty days time was reasonably necessary to reinstate the telephone service;

"(7) That the profits lost to the telephone line during the period of thirty days amounted to $172.75;

"(8) That the change in the telephone line enhanced its valuation $646.90;

"(9) That in the construction of the power line it was necessary, in order to render satisfactory service, to construct it in such close proximity to the telephone line that the power line would interfere with the use of the telephone line;

"(10) That it was not reasonably practicable for the service company to have constructed its power line one-half a mile east of its present location and still furnish service in a satisfactory manner to its patrons;

"(11) That prior to the construction of its power line, the defendant had notice of the location of the telephone line and that the latter was being operated as a single wire system with a ground circuit.

"The Court rendered a judgment in favor of the plaintiffs for the sum of $368.75, with interest and costs.

"Several contentions are urged by appellant, but the members of this Court are unable to agree upon the two main issues which present questions not heretofore decided in this state, so far as we are able to find.

"It appears that, notwithstanding the finding of the jury that the service company was not chargeable with negligence, the Trial Judge disregarded this finding as being immaterial. It further appears that because the evidence without contradiction showed that, by the construction and operation of the power line, the plaintiffs' telephone line could not be used by its patrons until it had been changed from a ground to a wire circuit system, the trial judge disregarding the question of negligence, concluded that the service company was liable under the Constitution, Art. 1, Section 17, which provides that

" 'No person's property shall be taken, damaged or destroyed for or applied to public use without adequate compensation being made.'

Plaintiffs had constructed their telephone line near the highway with the permission of practically all of the land owners through whose property it ran. The service company had never instituted condemnation proceedings against the telephone company.

"The service company contends that its general demurrer should have been sustained to the petition or a verdict directed in its favor, or in any event the court should have rendered judgment for it on the findings that it was not negligent, because the law is that one maintaining under a lawful authority a high tension electric line near a public highway, is not liable to the owners of a previously constructed telephone system rightfully constructed along said highway, for the cost of substituting a metallic return circuit for the earth as formerly used, which is made necessary by induction from the high power line which interferes with the use of the telephone instruments.

"This statement of the law seems to be in line with the holding in Postal Telegraph & Cable Co. v. Pacific Gas & Electric Company, 56 A. L. R., 421; Yamhill County Mut. Tel. Co. v. Yamhill Electric Co., 33 A. L. R., 380, and other cases cited in appellant's brief.

"The measure of damages applied by the Court was the actual cost of materials and labor in changing the telephone system from a ground to a wire circuit and adding to this the loss of revenue and earnings for the thirty days during which the telephones were out of commission, and deducting from the total the enhanced value of the telephone system due to improvements resulting from the change.

"Appellant contends that the measure of damages was the general rule which is the difference between the value of the telephone property immediately before the interference complained of and the value thereof when such interference took effect.

"We therefore certify to Your Honors the following questions:

"(1) Did the Trial Court err in overruling the defendant's general demurrer to plaintiffs' petition?

"(2) Did the Trial Court err in refusing to direct a verdict for defendant?

"(3) Were the plaintiffs entitled to recover under the constitutional provision quoted above, without regard to the issue of negligence as found by the jury?

"(4) Did the Trial Court adopt and apply the correct measure of damages?"

Inasmuch as our answer to the third question certified is decisive of this controversy, our discussion of the law of the case will be confined to this particular question.

Appellees insist that they were properly permitted to recover for the expense of converting their telephone lines from a ground circuit to a metallic system because the injury inflicted by the operation of appellant's high-powered electric line was within the constitutional provision protecting a citizen's property from injury or damage when taken for public use without compensation being paid therefor.

The question as to whether an electric power company is liable to a telephone or telegraph company for inductive or conductive interference with the latter's lines by reason of electrical energy in the power company's lines, in the absence of negligence, unskillfulness or malice, while of first impression in this state, is not a new or novel one. It has frequently been solved by the courts of England and of many jurisdictions in this country. The decided weight

of authority sustains the proposition of non-liability for such injury in the absence of negligence or malice. Phillipay v. Pacific Power & Light Co., 120 Wash., 581, 23 A. L. R., 1251, 207 Pac., 957, 211 Pac., 872; Yamhill County Mutual Tel. Co. v. Yamhill Electric Co., 111 Ore., 57, 33 A. L. R., 373, 224 Pac., 1081; Lakeshore & M. S. R. Co. v. Chicago, L. S. & S. B. R. Co., 48 Ind. App., 584, 92 N. E., 989, 95 N. E., 596; Postal Tel. & Cable Co. v. Chicago L. S. & S. B. R. Co., 49 Ind. App., 697, 97 N. E., 20; Citizens Tel. Co. v. Fort Wayne & S. R. Co., Annō. Cas., 1916-A 132, and note, 53 Ind. App., 230, 100 N. E., 309; Panton v. Holland, 17 Johns, 92, 8 Am. Dec., 369; Cumberland Tel. & Tel. Co. v. United Electric Co., 12 L. R. A., 544, 42 Fed., 273, 27 L. R. A., 236, 93 Tenn., 492, 29 S. W., 104; Dakota Central Tel. Co. v. Spink County Power Co., 42 S. D., 448, 176 N. W. 143.

Appellees' physical property was not injured or damaged. The use thereof was merely interfered with. It becomes important therefore, to determine whether the interference with the character of use being made of its property by appellees is properly within the protection of the constitutional guaranty relied upon.

The practicability of using the earth as one-half of the returning circuit of an electric current was the discovery of an elementary principle of science. It does not become the peculiar and exclusive property of a company operating under a franchise from the state, as this elementary law did not come as the result of a legislative or municipal grant. It is an elementary law of nature which is common and universal, and capable of being enjoyed by all.

It seems from the record in this case that there was no method by which the power company could prevent interference with the telephone lines when using its high-powered line except by locating the same such distance therefrom as would operate as a practical denial of its right to serve the public as it was authorized to do under its franchise. On the other hand, it is undisputed that the telephone company, by the adoption of the metallic circuit, instead of the antiquated ground circuit system, was able to and did avoid all the interference complained of.

Unquestionably, if there existed a safe and practical method known to science by which interference with the telephone company's line could have been avoided by the installation of devices or other means, it was clearly the duty of the power company to adopt the same. Yamhill County Mutual Tel. Co. v. Yamhill Electric Co., supra; 20 C. J., 314, Sec. 18.

The telephone company, in making use of the conductivity of the earth for its circuit, was appropriating something it did not own, and as a consequence thereof the duty rested upon it to equip its lines by the adoption of the latest approved scientific methods in such manner as would prevent electrical interference when another with equal rights should seek to avail itself of the use of scientific electrical principles. It would be unjust to permit the telephone company to make such exclusive use of the natural phenomena of using the earth as a conductor of electricity as would operate to prevent other companies from furnishing electrical service to the public without being compelled to assume the burden of bearing the cost of changing the telephone company's system from an antiquated to a modern one.

If the power company by the discharge of electricity from its lines interfered with the natural and ordinary use of land by the owner thereof, then the constitutional provision against injuring or damaging the property of another without compensation would be applicable. But, in this case there has been brought onto the land a new and distinct use which is out of the ordinary. Under the common law, a man could not increase the liabilities of his neighbor by applying his own property to special uses, whether for business or pleasure. Eastern S. A. Tel. Co. v. Cape Town Tramways, etc. Co., A. A., 381, 2 B. R. C., 114; Rylands v. Fletcher, L. R., 3, H. L., 330, 6 Mor. Minn. Rep., 129, 1 Eng. Rul. Cas., 256.

The constitutional provision that one's property cannot be damaged or injured for public use without compensation must be construed in the light of the state of the common law at the time such provision was adopted. Great Southern Life Ins. Co. v. City of Austin, 112 Texas, 1, 243 S. W., 778. Thus construed, a corporation exercising the right of appropriating private property for a public use is liable for such consequential damages as it would have been liable for at common law if it had not been created with special legislative privileges. Metropolitan West Side Elec. Co. v. Goll, 100 Ill. App., 323; Ritchey v. Pittsburg, etc. R. Co., 31 Pittsb. Leg., 424; Smith v. St. Paul, etc. R. Co., 39 Wash., 355, 81 Pac., 840, 70 L. R. A., 1017.

The use of both parties of the land in this instance is extraordinary, each making a similar use thereof different only in degree. The distinction between the rights of parties thus situated and the respective rights of parties where one is engaged in the ordinary development of his land and the other is subjecting his land to an

extraordinary use is clearly pointed out in the case of Lakeshore & M. S. R. Co. v. Chicago L. S. & S. B. R. Co., wherein the court says:

"This controversy is between users of electricity—appellant using light current, and comparatively delicate instruments, which are interrupted by escaping currents from the wires belonging to appellee which carry exceedingly high voltage. It is not a question between one engaged in the ordinary development of his land and the customary and appropriate employment of it according to its inherent qualities and its surroundings, without bringing upon it artificially any substance not naturally found there, and one engaged in the unnatural and extraordinary use of his property calling for the application of the maxim sic utere tuo, etc., which is the governing principle in the cases of Fletcher v. Rylands, L. R., 1 Exch., 265, 1 Eng. Rul. Cas., 235; and Rylands v. Fletcher, L. R., 3 H. L., 330, 1 Eng. Rul. Cas., 256, 6 Mor. Min. Rep., 129."

In Deiser on Law of Conflicting Uses of Electricity and Electrolysis, pp. 54–57, after review of numerous decisions upon this question, the author summarizes the correct rule deducible from adjudicated cases as follows:

Summarizing the results of these cases, and in particular the case last examined, this much may be accepted as established in legal controversies of this sort. The attempt to enjoin the construction and operation of a street railway because of any inconvenience to other franchise holders produced by its mere operation is hopeless. Nor can the holder of another franchise such as the telephone hope to recover the costs of remedying defective apparatus and any telephone apparatus capable of being disturbed to any marked extent by induction must be classified as defective so long as there exists insulating or isolating devices such as the complete metallic circuit or the non-induction circuit that would protect the telephone or telegraph rights. This much may be taken as settled."

The conclusion as to the correct rule is thus summarized in C. J., Vol. 20, p. 315;

"As has been said, however, the right of the first licensee is not exclusive. So long as it is not disturbed in its occupancy, it must submit to such unavoidable inconvenience as may result from a reasonable and fair exercise of the junior licensee's franchise. Damages which are merely a natural incident to and the direct and immediate result of the junior licensee's operations are not actionable, and such operations will not be enjoined. To give the prior licensee

a right of action, the junior licensee must have been guilty of negligence, trespass, or malice."

The rule in the Federal courts is in harmony with the principle announced in the cases we have cited. It was so declared in Cumberland Telephone & Telegraph Co. v. United Electric Co., supra, by the use of the following language:

"We think the obligation is upon the telephone company to adopt it, and that defendants are not bound to indemnify it; in other words, that the damage incidentally done to the complainant is not such as is justly chargeable to the defendants. Unless we are to hold that the telephone company has a monopoly of the use of the earth, and of all the earth within the city of Nashville, for its feeble current, not only as against the defendants, but as against all forms of electrical energy which, in the progress of science invention, may hereafter require its use, we do not see how this bill can be maintained."

Nor can we sustain the insistence that priority in time of location of a telephone company's lines is sufficient to create liability upon the part of the power company for alleged inductive or conductive interference of electrical energy from its subsequently located power line. The rule in this regard is tersely stated by the court in Cincinnati Inclined Plane R. Co. v. City & Suburban Tel. Assn., 48 Ohio St., 390, 12 L. R. A., 539, 29 Am. St. Rep., 559, as follows:

"Where a right is common and universal, and capable of being exercised by all at the same time, there is no applicability of the rule that he who in its enjoyment is prior in point of time is prior in right. He who is first in the field does not thereby gain a monopoly of use."

To the same effect are the following cases: Eastern & S. A. Tel. Co. v. Cape Town Tramways, Etc. Co., supra; Lakeshore & M. S. R. Co. v. Chicago L. S. & S. B. R. Co., supra, Phillipay v. Pacific Power & Light Co., supra; Yamhill County Mutual Telephone Co. v. Yamhill Electric Co., supra.

If the power company should be held liable in the absence of negligence, unskillfulness, or malice, in the construction or operation of its lines, for the character of injury here complained of, it would necessarily follow that in numerous instances scientific discoveries admittedly incapable of being exclusively appropriated by anyone would in effect be given as a monopoly to the first user. Under such a principle the owner of the first radio broadcasting station could have recovered damages for costs of converting his station

to a more powerful one if another station using greater power should have materially interfered with or destroyed the practical operation of such station. Likewise, the owner of a windmill, used for pumping water, would be entitled to recover from the owner of an adjacent lot the cost incident to changing his system to an engine pumping one made necessary by the act of such owner in constructing a building which would 'prevent the forces of nature from operating the windmill.

The appropriation of natural laws throughout the universe for purposes extending beyond the ordinary and natural use of land must be held to be one in which all are equally interested and equally entitled to appropriate, subject only to the restriction that each appropriator must exercise due care and caution to so use the same as to not cause a material interference with the lawful use of such forces by others.

We recommend that the third question certified be answered in the negative, which renders it unnecessary to answer the remaining questions.

The opinion of the Commission of Appeals answering the certified questions is adopted and ordered certified.

*C. M. Cureton,* Chief Justice.