McCULLOCH COUNTY ELECTRIC CO-OP., Inc., v. HALL.

No. 8835.

Court of Civil Appeals of Texas. Austin.

July 12, 1939.

Rehearing Denied Sept. 27, 1939.

Thompson, Knight, Baker, Harris & Wright, of Dallas, and Adkins & Adkins, of Brady, for appellant.

Woodruff & Holloway, of Brownwood, and Newman & McCollum, of Brady, for appellee.

BLAIR, Justice.

Appellee, W. O. Hall, sued appellant, McCulloch County Electric Co-operative, Inc., to enjoin it from energizing with electricity its high-voltage transmission lines until it had paid into court an amount sufficient to "metallicize" appellee's telephone lines as protection against electricity by induction and conduction from the high-voltage lines then under construction. The term "induction" describes electrical interference by the flow of electricity through the atmosphere from one wire to another without actual contact. The term "Conduction" describes the same condition, except that the medium of the flow of electricity from one wire to the other is the earth.

Appellee alleged that appellant was constructing its high-voltage transmission lines over and parallel to appellee's telephone lines along the public highways, with full knowledge that the energizing of the transmission lines with powerful currents of electricity would by induction and conduction interferences cause the destruction of the telephone system, which requires only a weak current of electricity in its operation, unless the telephone lines were metallicized against such interferences; and that appellant was negligent in the construction of the transmission lines in two particulars; (1) in not constructing a different type of power or transmission line, to-wit: one with a "balanced circuit," or isolated from the ground circuit, instead of a system requiring a grounded wire return of electricity; and (2) in not constructing its transmission lines 600 to 1,000 feet from the prior constructed telephone lines.

In answer to special issues, the jury found substantially as follows:

1. That the power line being constructed when put into service will interfere with the operation of appellee's telephone line to such an extent as to render it useless.

2. That there is no reasonably safe and practical method by which appellant could construct its power line so as not to materially interfere with the operation of the telephone line when such power line is put into use.

3. That appellant is not constructing its power line in accordance with the best and most improved methods to avoid interference with appellee's telephone lines.

4. That appellant is guilty of negligence in the method and manner of constructing and causing to be constructed its power line.

The Court defined "negligence" to be the failure to use care and precaution, means,

methods and appliances as a person of ordinary prudence would use to avoid interference with appellee's telephone business.

The jury also found, in answer to other issues, facts concerning the value of the telephone system; the amount necessary to metallicize same, and its value both before and after being metallicized. Judgment was accordingly rendered for the amount of the cost of metallicizing the telephone system, less the increase in value which would result from metallicizing; and appellant was enjoined from energizing its transmission lines until it had paid said amount into court.

Under our conclusions, two questions of law are presented:

1. Does the induction and conduction of electricity complained of by appellee to his telephone system, rendering the same useless unless metallicized, constitute damages and destruction of appellee's property within the meaning of Sec. 17 of Art. 1 of the Constitution of Texas, Vernon's Ann.St., providing that no business or property shall be taken, damaged, or destroyed for or applied to public use without adequate compensation being made, in the absence of negligence on the part of the appellant in the construction and maintenance of its power line in question?

2. If negligence is required as fixing liability for damages resulting from the induction and conduction of electricity complained of, then did appellee show negligence on the part of appellant in constructing the high-power line?

The law is settled in Texas, the United States and in England that there is no liability for induction and conduction with a telephone line by a high-power transmission line, in absence of negligence, malice or unskilfulness on the part of the interfering transmission line or agency; and no extended discussion need be made of this question.

In the case of Southwestern Public Service Co. v. Moore, 119 Tex. 391, 29 S.W.2d 329, 332, the Commission of Appeals, in answering a certified question, held as follows: "The question as to whether an electric power company is liable to a telephone or telegraph company for inductive or conductive interference with the latter's lines by reason of electrical energy in the power company's lines, in the absence of negligence, un-

skillfulness, or malice, while of first impression in this state, is not a new or novel one. It has frequently been solved by the courts of England and of many jurisdictions in this country. The decided weight of authority sustains the proposition of nonliability for such injury in the absence of negligence or malice."

The above conclusion of nonliability in absence of negligence is predicated upon the reasoning that where a right is common and universal, and capable of being exercised by all at the same time, the rule that he who is prior in point of time is prior in right is not applicable, because he who is first in the field does not thereby gain a monopoly of use. In applying the rule courts have held that a telegraph company cannot recover damages for the mere construction of a power line so close to its wires that the induction interferes with their use. Postal Tel.-Cable Co. v. Pacific Gas & E. Co., 202 Cal. 382, 260 P. 1101, 56 A.L.R. 414.

In the case of Phillippay v. Pacific Power & L. Co., 120 Wash. 581, 207 P. 957, 211 P. 872, 23 A.L.R. 1251, after discussing the fact that the telephone company did not own the earth which it used to return its current, held in substance that where a high-voltage power line is lawfully maintaining its line along a public highway it is not liable to the owners of a previously constructed telephone system, rightfully constructed along the same highway, for the cost of substituting a metallic return circuit for the earth as formerly used, and which is made necessary by induction from the high-power line which interferes with the use of the telephone company's instruments. Other pertinent authorities are: Cumberland Teleg. & Tel. Co. v. United Electric Ry. Co., 93 Tenn. 492, 29 S.W. 104, 27 L.R.A. 236; Georgia Power Co. v. Parker, 48 Ga. App. 807, 173 S.E. 730; Citizens' Tel. Co. v. Ft. Wayne & S. Ry. Co., 53 Ind.App. 230, 100 N.E. 309, Ann.Cas.1916A, 132; Paris Electric Ry. Co. v. S. W. Teleg. & Tel. Co., Tex.Civ.App., 27 S.W. 902; Hudson River Tel. Co. v. Watervliet Turnpike & R. Co., 135 N.Y. 393, 32 N.E. 148, 17 L.R.A. 674, 31 Am.St.Rep. 838; Western Union Tel. Co. v. Los Angeles Electric Co., C.C., 76 F. 178; Northwestern Tel. Exchange Co. v. Twin City Tel. Co., 89 Minn. 495, 95 N.W. 460, 463; Northern Tel. Co. v. Iowa Tel. Co., Iowa, 98 N.W. 113; Birmingham Traction Co. v. South-

ern Bell Tel. & Teleg. Co., 119 Ala. 144, 24 So. 731; Weleetka Light & Water Co. v. Northrop, 42 Okl. 561, 140 P. 1140; Edison Electric Light & Power Co. v. Merchants' & Manufacturers' Electric Light, Heat & Power Co., 200 Pa. 209, 49 A. 766, 86 Am.St.Rep. 712.

The only differences between the instant case and the Moore case above quoted from is, that the jury found that appellant was negligent; whereas, in the Moore case the jury found the defendant not negligent in the construction of its high-power line. If there is any evidence to support this finding of the jury, of course appellee should recover. We have reached the conclusion, however, that the undisputed evidence shows that appellant is not guilty of negligence in the construction of its Multi-grounded Wye Type transmission system.

The controlling facts are in the main undisputed and show that appellee has for more than 20 years owned and operated a rural telephone system, consisting of a central office in the town of Lohn, with lines running out along several public roads, and has some 92 miles of poles with 150 miles of wires, and serves about 155 patrons or phone users. The telephone system is what is known as a grounded circuit or type, composed of one wire which runs from the central office at Lohn to the various homes of patrons and is grounded at intervals so that the electrical current employed returns through the ground to its source at the central office. This type of telephone system is that in ordinary use throughout rural areas in Texas, and although it is not in the best state of repair, it is reasonably serving the needs of its patrons, and is the most economical system both with respect to construction and operation. It is susceptible of interferences by induction and conduction of electricity escaping from high-voltage electric transmission lines where they are operated near each other, or run parallel for any substantial distance, and particularly so by conduction where both employ the ground contacts with returning electrical current flowing through the ground.

Appellant, at the time of the trial, was constructing its high-voltage electric transmission and distribution . system, which parallels appellee's telephone lines for about 50 miles; the power line running along the opposite side of the public road from the telephone lines for a distance of about 32 miles and on the same side of the road and practically over the telephone line for a distance of about 18 miles, the road being from 40 to 100 feet wide. The power or transmission line being constructed is what is known as the "Multi-grounded Wye Type." From the City of Brady, where the electricity is to be generated, to the town of Lohn, the power line is what is referred to as a "three-phase-line," consisting of three phase wire over which the outgoing current travels and a neutral wire which is grounded at frequent intervals; and the extension lines from Lohn in several directions are "single phase" lines, with one wire for outgoing current and a neutral wire which is grounded at frequent intervals for the return current. The operation of appellant's system results in the return current being divided, a part of it returning over the neutral wire, but a larger part of it returning through the ground to the source of generation. The power lines carry a high current of electricity while the telephone lines carry a weak current, which will result in electricity escaping from the power lines and by induction and conduction passing to the telephone lines, rendering them useless unless the telephone lines are metallicized. This is done by adding another wire for the entire course of the telephone lines, so that there will be two wires instead of one. When so constructed, the current will go out over one wire and will return over the second or added wire, instead of through the ground. Naturally, this doubles the amount of wire required and increases the requirement for support in the way of telephone poles and other equipment. It will cost much less to change the telephone system so that it will not be susceptible to induction and conduction interferences by the grounded power line, than it will cost to build the power line so that its current would be isolated from the ground, and so as not to interfere with the grounded telephone line. These conditions will exist and relate to the portion of the telephone across the road and parallel to the power line.

With respect to the portion of the telephone line over which the power line was built, or in very close proximity thereto, dangers arise which make hazardous the lives of the employees working on the telephone line, the employees being apt to come in contact with and be burned or

electrocuted by electricity escaping from the high-power line. There were also dan-. gers from the breaking or falling of the high-power line on the telephone line beneath, thereby charging it with high voltage and resulting in injury to the telephone property as well as to employees and patrons of the telephone company. These dangers were admitted by appellant, and by pleadings it offered to remove or bear the expense of removing the telephone lines across the road in all instances where appellant had actually overbuilt the telephone line. By pleadings, appellee replied that the dangers and injury to the telephone line would continue, even though the line were moved across the road, and particularly the induction and conduction interferences.

It is not contended that appellant has been negligent in the actual construction of its transmission system. Nor is there any contention either by pleadings or evidence that appellant has not constructed the best Multi-grounded Wye system possible. Appellee's claim of negligence rests solely upon the grounds that appellant should have chosen what is referred to as a "balanced circuit" system, and that it should have built its lines farther removed from the telephone line. The latter ground of negligence alleged was not established by any evidence. The first ground under the evidence simply charges that appellant selected and constructed the wrong type or kind of transmission system; and that the operation of the Multi-grounded Wye Type power line will be the main factor causing induction and conduction interferences with the grounded telephone line. The undisputed evidence showed that the Wye type power line, like the grounded type telephone line, is particularly adapted to serving rural areas, and is much cheaper and more economical both as to construction and operation. The Wye Type multi-grounded construction is a type of construction in general use, not only in those lines constructed as Rural Electrification Administration projects, but by power companies throughout the United States. It was also shown to be safer than the "Delta" type system, which one expert testified was capable of being made into a "balanced circuit" type. The "balanced circuit" system, according to one witness, is constructed so that the electric current goes out over one wire and returns over another, and is isolated from the ground; and that conduction interference

by electricity returning through the ground is eliminated or greatly relieved. This type of construction is not extensively used, is not as efficient as the Wye type, and is much more expensive and more dangerous than the Wye type system employed by appellant.

■ It is true that the jury found that appellant is not constructing its power line in accordance with the best and most improved methods to avoid interference, and that there is no reasonably safe and practical method by which appellant could construct its power line so as not to materially interfere with the telephone line; but such findings are not based upon any evidence that there was any other safe and practical method it could employ. Each of the other two types described in the evidence was much more expensive, and each constructed in accordance with the "balanced circuit" method would be less efficient than the Wye type adopted; and there is no serious conflict or contradiction of the evidence to the effect that the Multi-grounded Wye type was much safer or far less hazardous to operate than either of the other ungrounded types. We, therefore, conclude that since appellant constructed its line in accordance with efficiency and economy and adopted a plan and method of construction which is generally used throughout the country; and since it is shown without material dispute that the only other methods or systems that could have been adopted would have been much more expensive and dangerous and less effective in operation, we hold that appellee failed as a matter of law to establish any negligence in the construction of the power line of appellant; and that in the absence of negligence in the construction of its power line, there is no liability on the part of appellant for the induction and conduction interferences complained of.

■ The finding of the jury that there is no reasonably safe and practical method by which appellant could construct its high-power line so as not to interfere with the telephone line is not entirely clear. If it were the intention of the jury to find that the particular type of high-power line constructed by appellant could not in any event be constructed so as to be reasonably safe and practical, then under the undisputed evidence above detailed, appellant would be deprived of the right to select a transmission line or system which is in

general use throughout the country, and one' which has been advised, approved and employed by competent engineers everywhere. In the instant case, appellant was granted permission by the commissioners court to use the public highways. The record is silent as to whether appellee had such permission; but no point is made that he did not have such permission. In such situation, the authority 18 Am.Jur. 430, 31, reviews the decisions and summarizes the rule applicable to be as follows: "As between electric companies exercising similar franchises in the same street or highway, priority of franchise and occupancy against a subsequent licensee thereof carries with it superiority of right to the extent that the subsequent licensee is under the duty so to construct its system as not to interfere unnecessarily with the prior licensee in the exercise of its franchise. However, priority in grant does not carry with it the exclusive right in the use of the streets, but merely protects the first company in its occupation of the streets with its poles and wires. Where the use of electricity is common to both parties acting under public sanction, the consensus of opinion, both in England and in this country, is that where one is acting under legislative authority and within the right given, and reasonably within the exercise thereof, using care and caution regarding the rights of his neighbor, any inconvenience or incidental damage that may arise in the absence of negligence from the reasonable use of his own property will be regarded as within the rule cammum absque injuria. When one company is operating a low-tension wire and another is maintaining a high-tension wire, the plan evolved by the law seems to be to 'live and let live.' Each company should do its part to prevent unnecessary friction in the working of the two lines."

■ Appellant had the right to select from two or more types of transmission systems. It selected the one which was most economical and which was safest with respect to the public generally, although its operation may incidentally interfere to some degree with the use of the parallel telephone system occupying the same road. In such situation, the rule seems to be that when one company is operating a low-tension wire and another is maintaining a high-tension wire, the plan evolved by the law seems to be "to live and let live." Each company should do its part to prevent unnecessary friction in the working of the two lines. Yamhill County Mutual Tel. Co. v. Yamhill Electric Co., 111 Or. 57, 224 P. 1081, 33 A.L.R. 373.

■ On the other hand, if it were the intention of the jury to find that no system of high-power line could have been constructed which would not have interfered with the use of the telephone system unless it were metallicized, then under the undisputed evidence appellant has selected the one that is safer to the public generally, and since it is less expensive for appellee to prevent unnecessary friction by metallicizing his telephone lines, he should bear the expense of doing so; and the weight of authority so holds.

As above stated, appellant conceded liability for the expense of removing the telephone line from beneath its wires. That is, the portion of the telephone line over which the power line was built, and from which grave dangers arise with respect to safety of the employees working on the telephone line, and to the property and patrons of the telephone line, who might be injured by electricity escaping from, or from contact with, the high-power line. By pleadings, appellant offered to remove or bear the expenses of removing the telephone line from beneath its high-power line. This will protect or compensate appellee for any right of prior occupancy of the public road with his poles and wire, and will alleviate any unnecessary injury that may have been occasioned by construction of the power line over the telephone line, or in such close proximity thereto as to unnecessarily interfere with the telephone line and to occasion the grave dangers pointed out. This issue was not determined on the trial, and the judgment of the trial court is reversed and the cause remanded for the purpose of determining this issue, which under our above conclusion is the only issue left to be determined.

Reversed and remanded.