

# THE ATTORNEY GENERAL
## OF TEXAS

AUSTIN 11, TEXAS

GERALD C. MANN
XXXXXXXXSON
ATTORNEY GENERAL

Honorable O. Kennedy
County Attorney
Bee County
Beeville, Texas

Dear Sir:

Opinion No. O-2318

Re: Under the stated facts is the married
woman a citizen and entitled to vote?
And another question.

Your recent request for an opinion of this department,
on the questions as are herein stated, has been received.

We quote from your letter as follows:

"Approximately forty five years ago a woman who
was born and raised in this county married an alien.
Her husband was never naturalized. This question has
arisen often in this county. The election judges
have requested that I ask you for your ruling as to
whether or not this woman is a citizen and entitled
to vote.

"In 1919 the Commissioners Court of this county
granted a franchise to certain members of one of our
rural communities to build a telephone line from the
county seat to such community. The line was immed-
iately constructed and continued in operation until
very recently. The county granted another franchise
to a power company to construct an electric light
wire along the same highway right-of-way from the
county seat to said community. When the electric
light wires were put in use, they killed completely
the telephone line and the telephone line cannot now
be used because of the electric line. It is admitted
by the people owning the telephone line that there
can be procured and constructed telephone lines, at
the same location of their present lines, which would
be satisfactory, but the excuse of making the im-
provements and changes would be prohibitive to the
community. The Commissioners Court of this county
has requested that I ask your ruling as to whether
or not Bee County is liable in damages to the people
owning the telephone line by reason of the county

having first granted a franchise for the construction of the telephone lines and later granted a franchise to another company to construct the electric light line which killed and rendered useless the telephone line.

"* * * * *."

By the Federal Constitution, Article 14, Section 1:

"All persons born or naturalized in the United States, and subject to the jurisdictions thereof, are citizens of the United States and of the State wherein they reside."

Section 1 of Title 8, U.S.C.A., provides that:

"All persons born in the United States and not subject to any foreign power are declared to be citizens of the United States."

Section 9, Section 9a and Section 17a of Title 8, U.S.C.A., read as follows:

"Section 9. SAME; CITIZENSHIP OF WOMEN CITIZENS OF UNITED STATES AS AFFECTED BY MARRIAGE. A woman citizen of the United States shall not cease to be a citizen of the United States by reason of her marriage after March 3, 1931, unless she makes a formal renunciation of her citizenship before a court having jurisdiction over naturalization of aliens."

"Section 9a. SAME; REPATRIATION OF NATIVE-BORN WOMEN MARRIED TO ALIENS PRIOR TO SEPTEMBER 22, 1922; COPIES OF PROCEEDINGS. After June 25, 1936 a woman being a native-born citizen, who has or is believed to have lost her United States Citizenship (sic) solely by reason of her marriage prior to September 22, 1922, to an alien, and whose marital status with such alien has or shall have terminated, shall be deemed to be a citizen of the United States to the same extent as though her marriage to said alien had taken place on or after September 22, 1922: Provided, however, that no such woman shall have or claim any rights as a citizen of the United States until she shall have duly taken the oath of allegiance as prescribed in section 381 of this title, at any place within or under the jurisdiction of the United States before a court exercising naturalization jurisdiction thereunder or, outside of the jurisdiction of the United

States, before a secretary of embassy or legation or a consular officer as prescribed in section 131 of Title 22; and such officer before whom such oath of allegiance shall be taken shall make entry thereof in the records of his office or in the naturalization records of the court, as the case may be, and shall deliver to such person taking such oath, upon demand, a certified copy of the proceedings had including a copy of the oath administered, under the seal of his office or of such court, at a cost not exceeding $1, which shall be evidence or the facts stated therein before any court of record of judicial tribunal and in any department of the United States." (Underscoring italics)

"Section 17a. SAME; MARRIAGE TO FOREIGNER. A citizen of the United States may upon marriage to a foreigner make a formal renunciation of his or her United States citizenship before a court having jurisdiction over naturalization of aliens, but no citizen may make such renunciation in time of war, and if war shall be declared within one year after such renunciation then such renunciation shall be void."

Alienage may arise in three ways; by a birth, by election, and by operation of law. CORPUS JUR., Vol. 2, p. 1044.

In Re Chamorra (D. C. Cal., 1924), 298 Federal 669, with reference to Section 9, supra, it was held that this section had no effect on the status of an American woman who married an alien before the enactment of the section, and that such a woman remains an alien.

We do not have sufficient facts to categorically answer your first question. However, if the woman, mentioned in your inquiry, was married before September 22, 1922, she is an alien and is not entitled to vote unless she has complied with Section 9a, Title 8, U.S.C.A., supra. On the other hand, if the woman was a citizen of the United States and married since the third day of March, 1931, unless she had made a former renunciation of her citizenship before a court having jurisdiction over naturalization of aliens, she has not ceased to be a citizen of the United States and the state of Texas. Provided, that she had not married an alien ineligible to citizenship, and would be entitled to vote unless otherwise disqualified.

With reference to your second question, we direct your attention to Articles 1435 and 1436, Vernon's Annotated Civil Statutes, which read as follows:

"Art. 1435.  POWERS.- Gas, electric current and
power corporations shall have power to generate, make
and manufacture, transport and sell gas, electric cur-
rent and power to individuals, the public and muni-
cipalities for light, heat, power and other purposes,
and to make reasonable charges therefor; to construct,
maintain and operate power plants and substations
and such machinery, apparatus, pipes, poles, wires,
devices and arrangements as may be necessary to oper-
ate such lines at and between different points in
this State; to own, hold and use such lands, right
of way, easements, franchises, buildings and struc-
tures as may be necessary for the purpose of such
corporation."

"Art. 1436.  RIGHT OF WAY.- Such corporation
shall have the right and power to enter upon, con-
demn and appropriate the lands, right of way, ease-
ments and property of any person or corporation, and
shall have the right to erect its lines over and
across any public road, railroad, railroad right of
way, interurban railroad, street railroad, canal or
stream in this State, any street or alley of any in-
corporated city or town in this State with the con-
sent and under the direction of the governing body
of such city or town.  Such lines shall be constructed
upon suitable poles in the most approved manner and
maintained at a height above the ground of at least
twenty-two feet; or pipes may be placed under the
ground, as the exigencies of the case may require."

In the case of McCULLOCH COUNTY ELECTRIC CO-OP vs.
HALL, 131 S. W. (2nd) 1019, among other things, it was held
that:

"The law is settled in Texas, the United States
and in England that there is no liability for induc-
tion and conduction with a telephone line by a high-
power transmission line, in absence of negligence,
malice of unskilfulness on the part of the interfer-
ing transmission line or agency; and no extended dis-
cussion need be made of this question.

"* * * *.

"The above conclusion of nonliability in absence
of negligence is predicated upon the reasoning that
where a right is common and universale, and capable
of being exercised by all at the same time, the rule

that he who is prior in point of time is prior in
the field does not thereby gain a monopoly of use.
In applying the rule courts have held that a tele-
graph company cannot recover damages for the mere
construction of a power line so close to its wires
that the induction interferes with their use."

This case further holds in effect that if an electric
company in building a transmission line paralleling the tele-
phone line and could find no system unless it were metalliciz-
ed and the electric company selected a system which was safer
to the public generally , the owner of the telephone system
should bear expenses of metallicizing the telephone lines.

It was held in our opinion No. 0-1805:

"That the Commissioners Court would not have the
authority to grant a franchise to the Central Power
& Light Company to cover the County of Brewster, Tex-
as."

We are enclosing a copy of this opinion for your con-
venience.

The general rule governing powers and limitations of
the County Commissioners' Court, as set out by the Supreme
Court in COMMISSIONERS COURT vs. WALLACE, 15 S. W. (2d) 535,
reads, in part, as follows:

"The Commissioners' Court is a creature of the
State Constitution, and its powers are limited and
controlled by the Constitution and the laws as passed
by the Legislature. Art. 5, Sec. 18, Constitution
of Texas; Baldwin vs. Travis County, 88 S. W. 480;
Seward vs. Falls County, 246 S.W. 728; Land vs. R.
Bland vs. Orr, 39 S.W. 558."

Articles 2351 throughout 2372s, Vernon's Annotated
Civil Statutes, as amended, set out the various powers and
duties of the Commissioners' Court and are too lengthy to set
out in this opinion. However, it should be pointed out that
none of the above mentioned articles directly or indirectly,
give the Commissioners' Court the power to issue a county
franchise to the electric light and power company or to the
telephone company, mentioned above.

In TEX. JUR., vol. 19 at pp. 876, 879, we find the fol-
lowing language in regard to franchises:

"To be a franchise the right must be of such a

nature that, without express legislative authority, it cannot be exercised * * * The legislative department of the government is the source of the grant of a franchise * * * The legislature, unless constitutionally inhibited, may exercise authority by direct legislation, or through agencies duly established, having power for that purpose."

It is a well established rule that the Commissioners Court may exercise only those powers specifically designed by the Constitution or the Statutes; and the fact that a franchise is a very special privilege only given by direct legislative grant or by specifically delegated agency, we must reach the conclusion that the County Commissioners Court does not have the power or authority to grant a county franchise to an electric company or a telephone company.

A county is a body corporate which acts through its Commissioners Court. The acts of the Court, therefore, in good faith performed within the scope or apparent scope, of the powers committed to it under the Constitution and laws are the acts of the County. TEX. JUR., Vol. 11, p. 629.

One who deals with the county is charged with notice of regulations created by the legislature; and a custom which ignores the law cannot be invoked for the purpose of validating a transaction which is otherwise invalid. TEX. JUR. Vol. 11, 640; GOSS v. FANNIN COUNTY, 244 S.W. 204.

In view of the foregoing you are respectfully advised that it is the opinion of this department that the Commissioners Court of Bee County did not have the legal right or authority to grant a franchise to the telephone company or to the power company, and such unauthorized acts of the Commissioners' Court would not be acts of the county. Therefore, Bee County would not be liable for damages to people owning the telephone line which was rendered useless by the construction and operation of the power line.

Trusting that the above fully answers your inquiry, we are

AW:ob:wc
ENCLOSURE

Yours very truly
ATTORNEY GENERAL OF TEXAS

APPROVED JULY 1, 1940
s/Gerald C. Mann
ATTORNEY GENERAL OF TEXAS

By s/Ardell Williams
Ardell Williams
Assistant

Approved Opinion Committee By s/BWB Chairman